[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 254 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 255 
The fraud of Townsend being established as between himself and the plaintiffs, the discharge was a nullity, and the mortgage continued a valid lien upon the premises. Those who obtained liens subsequently from Townsend stood in no better condition than himself, unless they were bona fide purchasers, or incumbrancers, for value, without notice; and not then, if Townsend's fraud amounted to a felony. *Page 256 
The first position assumed by the plaintiffs' counsel is, that this fraud was a felony by the provisions of the statutes. (2 R.S., 677, § 53; id., 702, § 30.) The section first cited declares that "every person who shall, by any false pretence, obtain the signature of any other person to any written instrument, shall, on conviction thereof, be punished by imprisonment in a state prison, county jail, or by a fine," c.; and the section secondly cited declares that "the term`felony,' when used in this act, or any other statute, shall be construed to mean an offence for which the offender, on conviction, shall be liable by law to be punished by death or by imprisonment in a state prison."
This question incidentally arose in the case of Mowrey v.Walsh (8 Cow., 238), where it was held that the obtaining of money or goods by false pretences, with intent to defraud the owner, was a criminal offence, punishable by imprisonment in a state prison, or county jail, in the discretion of the court. Still, it was not a felony at common law, nor had it been made a felony by statute. This decision was before the adoption of the Revised Statutes containing the section last above cited. The effect of that section of the statute has been several times before the court, and considerable conflict of opinion seems to prevail in regard to it. In Andrew v. Dieterich (14 Wend., 36), it was held that this statute had declared all offences which rendered the offenders liable to punishment in a state prison, felonies, and that a fraudulent vendee could no longer transfer a valid title to property thus obtained, even to a bonafide purchaser, without notice. In Peabody v. Fenton (3 Barb. Ch., 463), the Chancellor doubted whether that view of the operation of that section of the Revised Statutes was correct, but expressed no definite opinion on the subject. In Robinson
v. Dauchy (3 Barb., 20, 29), the court said "the goods in question were purchased of the plaintiffs under false pretences,amounting to a felony," citing the section of the statute above referred to. Thus stands the question upon authority; and its final determination is one of considerable importance. None of the cases cited give evidence that the question was examined with *Page 257 
any considerable degree of care. The section of the statute relied upon is found near the close of a chapter relating to "crimes, and their punishment." It purports to give a statutory definition to the term "felony," when used in the statutes. The other sections of the same chapter, which follow it, define certain other terms. It will, however, be observed that this section does not assume to define the meaning of the term "felony," except when used in a statute, and that this term is not used in the statute relating to false pretences. This section does not declare that every offence punishable in a state prison is a felony, nor does such a conclusion naturally follow from its language. At common law, the term "felony" had a well known and definitive meaning. It was, any offence which occasioned a total forfeiture of lands or goods, or both; to which capital or other punishment might be superadded. (4 Bl. Com., 94; Bouv. Dic., 517.) That term is frequently used in the Revised Statutes (2 R.S., 698); and as all common law punishments for offences specified in those statutes were abolished (id., 701), the term would have been without a distinct and positive meaning had not the section under consideration been inserted. I am of the opinion that the common law rule, as to the character of the crime of obtaining goods, c., by false pretences, was not changed by the provision of the Revised Statutes above cited.
If, therefore, the bank was a bona fide holder for value without notice, its lien is entitled to priority over that of the plaintiffs.
The plaintiffs insist that the bank was not a bona fide
holder, without notice, upon two grounds:
1st. Because its mortgage was taken as security for a precedent debt; and,
2d. Because, when the mortgage was taken by the bank, Townsend was in the actual possession by virtue of a lease from the plaintiffs as their tenant, of which the bank and all other persons proposing to acquire any interest in the property from him were bound to take notice at their peril. *Page 258 
The facts of the case, I think, conclusively dispose of the first point. It is true that Townsend's indebtedness to the bank, at the date of the mortgage, was $145,000, and the mortgage only $93,600: still, the mortgage was given, not only as applicable to that liability, but as a security for such future advances as the bank might thereafter hold against him, and was also declared a continuing guaranty for the amount expressed on its face. Townsend continued to do business with the bank, paying in and drawing out money, so that, when this action was commenced, he was indebted $281,000. Thus it appears that future advances were made to Townsend by the bank, and it is fair to presume they were made in part on the faith of this additional security; so that, whether or not the prior indebtedness was reduced below the amount by the mortgage secured makes no difference, because the mortgage security being applicable, by its terms, to any indebtedness of Townsend, any advance made upon its faith before notice constituted the bank a holder for a valuable consideration.
The second question is also, to a great extent, disposed of by the facts. The lease from the plaintiffs to Townsend was unknown and unrecorded. It was not known that Townsend ever took possession from the plaintiffs. The title was in his wife, and they were married before the act of 1848; and the lot was unincumbered. It is true that possession of a third person puts a purchaser upon inquiry, and makes it his duty to pursue his inquiries with diligence; but it is not absolutely conclusive upon him. (Williamson v. Brown, 15 N.Y., 361.) The rule laid down in that case is, that, when a purchaser has knowledge of any fact sufficient to put him on inquiry as to the existence of some right or title in conflict with that he is about to purchase, he is presumed either to have made the inquiry and ascertained the extent of such prior right, or to have been guilty of a degree of negligence equally fatal to his claim to be considered a bonafide purchaser. This presumption may, however, be repelled by proof. Under the facts and circumstances of this case, the possession of the premises by Townsend was not sufficient to put the bank upon inquiry as *Page 259 
to the existence of any right inconsistent with that which it proposed to acquire. Townsend's possession was consistent with the record title. He was not a third person to the transaction, but joined in the deed with the owner of the fee. In the absence of proof of actual notice, nothing appeared calculated to excite suspicion, or which should have put the bank upon inquiry. But had inquiry been made, and the facts ascertained, it would not have shown Townsend in possession under the plaintiffs. The plaintiffs never had the title or the possession of the mill lot. Townsend never had the title to give them. It is true, when Townsend gave them a deed of another piece of land, he took from them a lease of the mill lot; but he did not enter into possession of the mill lot by virtue of that lease. He continued in possession under the right obtained from his wife. The lease gave him no right: the plaintiffs could give him no right, for they had none to give; and although the lease may have been good, as a contract, between the parties to it, the plaintiffs obtained no rights to possession by reason of it, as no possession had passed with it.
The question, therefore, comes down to this: Was the fact that Townsend had taken a lease for the mill lot, which was unknown to the bank, and under which no possession had been or could be received, taken or claimed, sufficient to put the officers of the bank upon inquiry as to the nature of Townsend's possession? I think it was not.
But if it were otherwise, there is another point which entirely disposes of this case. The plaintiffs were guilty of grosslaches. The fraud complained of was discovered eighteen months before the mortgage was taken by the bank, and the matter was suffered to rest for fifteen months after that mortgage was given, until, upon the faith of it, in part, Townsend was enabled to increase his indebtedness to the bank from $145,000 to $281,000. As was said in Waldron v. Sloper (19 L. E., 115), "it is an elementary principle that a party coming into equity is bound to show that he has not been guilty of such a degree of negligence as to enable another party so to deal with *Page 260 
that which was the plaintiff's as to induce an innocent party to assume that he was dealing with his own." Had ordinary diligence been used in this case, Townsend would not have been able to palm off a mortgage upon these premises to another, and the plaintiffs would have been secured in their rights. As it is, one of two innocent parties must suffer; and as the plaintiffs, by their great neglect, put it in the power of Townsend to commit the fraud, they cannot ask the court to interfere. In any view of the case, the judgment must be affirmed.
COMSTOCK, Ch. J., SELDEN, LOTT, and HOYT, Js., concurred.