GEORGE WATERMAN et al., Respondents, *v.* GIDEON WEBSTER et al., Appellants.

A. being indebted to B. and C. in the sum of $1,500, executed and delivered to B., with the consent and direction of C., a mortgage on certain real estate to secure payment of said sum, which recited that the interest was to be paid to S. during her life ; at her decease $640.12 of the principal to be paid to B., the balance "to be invested in or secured on real estate of value sufficient to render such sum secure for the benefit" of plaintiffs, who were children of C. and then infants, "to be distributed between them when they respectively arrive at age, * * * the securites to be prepared ready to execute before it shall be payable." After the death of S., B. received the portion of principal payable to

him, and after plaintiffs became of age A. paid to B. the balance unpaid, the latter executing a discharge of the mortgage. In an action to compel a cancellation of the discharge and for a foreclosure of the mortgage *held*, that plaintiffs were entitled to the relief sought; that B. had no authority to receive the payment; that no such authority was given by the provision of the Code of Procedure in force at the time of the discharge (§ 113), which declares that the trustee of an express trust "may sue without joining with him the person for whose benefit the action is prosecuted" and which applies that character to one "in whose name a contract is made for the benefit of another."

Also, *held*, that A. was not protected by the provision of the statute (1 R. S. 730, § 66), declaring that "no person who shall actually and in good faith pay a sum of money to a trustee, which the trustee as such is authorized to receive, shall be responsible for the proper application of such money according to the trust."

*Considerant* v. *Brisbane* (22 N. Y. 389, 396); *Brown* v. *Cherry* (38 How. Pr. 352); *People* v. *Norton* (9 N. Y. 176); *Grattan* v. *N. L. Ins. Co.* (15 Hun, 74); *People ex rel. Becar* v. *Struller* (16 id. 234) distinguished.

(Argued December 15, 1887; decided January 17, 1888.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made October 31, 1884, which affirmed a judgment in favor of plaintiffs entered upon a decision of the court on trial at Special Term. (Reported below, 33 Hun, 611.)

This action was brought by the plaintiffs as beneficiaries under a mortgage executed to Jasper Waterman by the defendant Webster, for the purpose of cancelling of record a discharge of said mortgage and for the foreclosure of the mortgage, to enforce payment of the sum of $859.89, which they claimed to be due.

The trial court found that on the 30th day of November, 1857, the defendant, Gideon Webster, was indebted to Jasper A. Waterman and James M. Waterman, in the sum of $1,500 for lands conveyed by them to him. That James M. Waterman was the father of the plaintiffs who were then under the age of twenty-one years; that Webster, to secure the payment of the said sum and interest, to the persons and in the manner hereinafter stated, executed and delivered to Jasper A. Waterman, with the consent and direction of James M. Waterman,

the mortgage upon the premises described in the complaint, and the same was duly recorded. It bears date November 30, 1857, and in substance declares that the grant "is intended as a security for the payment of the sum of $1,500 and interest, as follows: Interest on the whole sum payable annually to Sarah Waterman, mother of said Jasper, during her life, and the sum of $640.12    *    *    *    at her decease to said Jasper, and the sum of $859.89 payable    *    *    *    on her decease, on the following conditions: That the said sum of $859.89, and interest on the same, accruing after the decease of the said Sarah, shall be invested in or secured on real estate of value sufficient to . render such sum secure for the benefit of George Waterman, Charles H. Waterman and Earl E. Waterman, children of James M. Waterman, or the survivor of them, to be distributed between them when they respectively arrive at age; and in case of the death of either, the survivor or survivors to take his share of said sum, the securities to be prepared ready to execute before it shall be payable; and in case of the decease of all of the said children before they become of age, then the sum hereby secured for their benefit shall be payable to James M. Waterman, if he shall then be living; and in case of his death, to the brothers and sisters, equally, of the said James M. Waterman then surviving, on the same conditions. The said party of the first part reserves the right to have this mortgage discharged at any time after three years, on his executing another payable in the same manner that this is, and on the same conditions, to the said Jasper, on lands situated within this state, amply sufficient in value to secure the whole sum hereby secured. The mortgage shall be payable at my dwelling-house, in Gowanda, N. Y., and this conveyance shall be void if such payments be made as herein specified."

Sarah Waterman died May 3, 1870, and James M. Waterman died May 10, 1870. The sum of $640.12 was paid to Jasper Waterman, or his assignee, as provided in the mortgage, and no question arises as to the validity of that payment. But the court further found that on the 6th of March, 1871,

and after the plaintiffs respectively reached the age of twenty-one years, Webster wrongfully and unlawfully paid Jasper A. Waterman the sum of $859.89, mentioned in the mortgage, and the latter executed a satisfaction piece or discharge of the mortgage, which Webster caused to be recorded. One Hill was a subsequent purchaser of the premises and he was charged with notice. He did not appeal to this court. Further facts appear in the opinion.

*Lorenzo Morris* for appellants. As the statute gave power to the mortgagee to collect the mortgage in his own name, payment to him in full of the debt secured thereby was both lawful and right, and said payment satisfied said mortgage. (Code, § 113; *Considerant* v. *Brisbane*, 22 N. Y. 396; *Brown* v. *Cherry*, 38 How. Pr. 352; *People* v. *Norton*, 9 N. Y. 176; *Gratton* v. *Nat. L. Ins. Co.* 15 Hun, 74; *People ex rel. Becar* v. *Struller*, 16 id. 234; *Wilson* v. *Troup*, 2 Cow. 195, 239.) The entire mortgage must be assigned to transfer the power of sale; it is indivisible and can operate but once. (4 Kent's Com. 147; Jones on Mortgages [3d ed.], § 1785; *Dencarat* v. *Wynkoop*, 3 Johns. Ch. 129, 145; *Johnson* v. *Turner*, 7 Ohio, 568; *Mervin* v. *Lewis*, 90 Ill. 504.) An equitable assignee cannot exercise the power of sale. He must proceed in equity. (Jones on Mort. § 1789; *People* v. *Keyser*, 28 N. Y. 229.) Independent of the power contained in the mortgage to collect the moneys as default occurred, the fact that the mortgage was left in the mortgagee's possession, from the date of its execution to the day it was by him discharged, long after it became due and after the plaintiffs arrived respectively of age, authorized the mortgagee to receive the moneys due thereon as well against the plaintiffs in this action as against Woodin, the assignee of a portion of said mortgage debt. (*Williams* v. *Walker*, 2 Sand. Ch. 325; *Smith* v. *Kidd*, 68 N. Y. 141; *Van Kuren* v. *Corkins*, 66 id. 77; Thomas on Mortgages, 123; *Doubleday* v. *Kress*, 50 N. Y. 413; *Hatfield* v. *Reynolds*, 34 Barb. 612; *Merritt* v. *Cole*, 9 Hun, 98; *Merritt* v. *N. Y. C. R. R. Co.*, 14 id. 324.) In case of failure of performance, the

Statement of case.

only remedy under the circumstances here existing, is a sale of the mortgaged premises. (3 R. S. [7th ed.] art. 4, tit. 2, chap. 1, p. 2195, § 139; *Colman* v. *Van Rensselaer*, 44 How. Pr. 368; *Turk* v. *Ridge*, 41 N. Y. 201; *Home* v. *Fisher*, 2 Barb. 57.) A promise in the nature of a condition is not a promise for the benefit of a party named in the condition, and no action will lie in favor of the party who might be benefited by the performance of the condition. (*Simons* v. *Brown*, 68 N. Y. 355; *Kelley* v. *Roberts*, 40 id. 432; *Wheat* v. *Rice*, 79 id. 296; *Turk* v. *Ridge*, 41 id. 201; *Salisbury* v. *Phillips*, 10 Johns. 57; *Johnson* v. *Forster*, 12 Metc. 157; *Simpson* v. *Brown*, 68 N. Y. 356; *Martin* v. *Fink*, 75 id. 134; *Young* v. *Young*, 80 id. 438.)

*William Woodbury* for respondents. This suit being between the original parties to the transaction the court will carry out the purpose for which it was made, unless restrained by forbidding language in the instrument. (1 John. Cas. 327; 1 Wend. 231.) The instrument was in effect two mortgages. (*Smith* v. *Post*, 1 Hun, 516–519.) Jasper had no authority to receive payment. (*Williams* v. *Walker*, 2 Sandf. Ch. 225; *Stillwell* v. *Mutual Life Ins. Co.*, 72 N. Y. 385; *Smith* v. *Kidd*, 68 id. 130.) Jasper's authority being limited a provision in the mortgage making it payable to him would have been in excess of authority and void. (*Swartout* v. *Curtis*, 1 Seld. 301; *Briggs* v. *Davis*, 20 N. Y. 15; 49 id. 555; Lalor, 147.) No words of trust or any equivalent thereto are contained in the instrument authorizing Webster to pay or Jasper to receive the $859.89. (72 N. Y. 376; 1 Edm. Stat. 688, § 133; *Wiggins* v. *Dunn*, 23 Barb. 461; *Bucklin* v. *Bucklin*, 3 Keyes, 148; Jarman on Wills, 761; 20 N. Y. 268; 24 id. 178.) Upon the plaintiffs arrival at the age of twenty-one, their right to the money secured by the mortgage became vested in them discharged of all conditions, and Webster's liability to them then became fixed. (*Richardson* v. *Sharpe*, 29 Barb. 222; *Prentice* v. *Janssen*, 79 N. Y. 479, 488; 9 Barb. 516; *Smith*

v. *Bowen*, 35 N. Y. 83 ; 1 John Ch. 25.) The party alone to whom the mortgage is payable can satisfy it. (1 Edm. Stat. 713, § 28; 7 Lans. 98; 11 Abb. [N. S.] 41; 16 id. 137; 25 How. 303.) Webster held the money secured by the mortgage as trustee for the plaintiffs, and when he paid to Jasper what he had covenanted he would pay to the plaintiffs, he did so at his peril. (*Briggs* v. *Davis*, 20 N. Y. 15 ; 13 Hun, 514; 7 Lans. 98; 2 Story's Eq. 537, 538, § 1133; id. 972, § 1196; *Dickinson* v. *Dickinson*, 3 Bro. Ch. R. 19 ; 3 Daly, 199.) The mortgage having been made payable to the plaintiffs by the direction of their father, it was an executed gift to them just as effectually as though it had been made payable to him and then delivered by him to them. (*Fulton* v. *Fulton*, 48 Barb. 581; *Bedell* v. *Carl*, 33 N. Y. 581; *Hiskney* v. *Vrooman*, 62 Barb. 650; *Martin* v. *Funk*, 75 N. Y. 134, 137, 138 ; 3 Hun, 322 ; 67 Barb. 397; 4 Bosw. 169 ; *Carpenter* v. *Dougherty*, 67 Barb. 387; *Battle* v. *Coit*, 26 N. Y. 406; *Severance* v. *Griffith*, 2 Lans. 38; *Spencer* v. *Spencer*, 95 N. Y. 353 ; 5 Cow. 202; 9 Wend. 80 ; 23 Barb. 461; 67 id. 398; *Thayer* v. *Marsh*, 75 N. Y. 340; *Derlip* v. *Keyser*, 67 id. 443.) There was no ratification of the payment to Jasper and such question cannot be raised. (*Walsh* v. *Flinn*, 43 N. Y. 23; *Vorhies* v. *Vorhies*, 24 Barb. 150.) The plaintiffs could not have made themselves personally liable to Jasper if they would. (2 Paige, 419 ; 9 John. 141; 50 Barb. 381; Story on Contracts, 68, 69 ; Chitty on Contra 140 ; 2 Kent. Com. 259.)

DANFORTH, J. The appeal is to succeed or fail upon the findings of the trial judge. From those it appears as a fact that the payment of the mortgage was made by Webster to Jasper Waterman; that he had no authority to receive it; that it was wrongful and unwarranted, and, therefore, gave no support to the satisfaction or discharge which he signed and delivered to Webster. Against the conclusion of the trial judge the appellant contends (1), that the only parties to the mortgage were Webster and Jasper Waterman; and (2), that

even if the mortgage was in whole or in part for the benefit of the plaintiffs, Jasper Waterman had the same right to receive the moneys secured thereby that he would have if upon the face of the mortgage it appeared to be for his sole benefit.    In support of this contention the appellants cite section 113 of the Code of Procedure (then in force), which declares that the trustee of an express trust "may sue without joining with him the person for whose benefit the action is prosecuted," and which applies that character to one "in whose name a contract is made for the benefit of another," and from it he argues that the conclusion of the trial court is wrong.    The point was not taken on the trial, nor does it seem to have any application.    The payment was without suit, and how it would have affected the parties had it been made in the course, or as the result of legal proceedings we need not inquire.    There was no suit, consequently no question as to proper parties.    But the special authority of the mortgagee was the same as the general law on which the appellants rely. The mortgage provides that in case of default in payment, the mortgagee might sell the premises and retain the amount then due for principal and interest.    This authority was not resorted to.    The payment was voluntary, and the cases (*Considerant* v. *Brisbane,* 22 N. Y. 389, 396; *Brown* v. *Cherry,* 38 How. Pr. 352; *People* v. *Norton,* 9 N. Y. 176; *Grattan* v. *Life Ins. Co.* 15 Hun, 74; *People ex rel. Becar* v. *Struller,* 16 id. 234) cited by the learned counsel for the appellants in support of his claim that the right to receive payment follows from his right to maintain an action for its enforcement, do not go to that extent.    They do show that section 113 embraces not only formal trusts declared by deed, but all cases in which a person acting in behalf of a third party, enters into a written express contract with another either in his individual name or in his own name expressly in trust for another.    The contract now involved is of neither description.    The mortgage contained an express agreement to pay Jasper $650.12.    So much was in a certain event to be paid directly to him and to that extent he might either receive payment or enforce the mortgage.    But how

was it before that event occurred? The grant was "security for the payment of $1,500 and interest," but to whom? —the interest on the whole sum, "to Sarah Waterman." She was the mother of Jasper and James, and had a dower interest in the premises, the conveyance of which formed the consideration of the mortgage. Upon her death $640.12 was "payable to Jasper," and upon the same event the remainder of the $1,500, viz., $859.89, was to be invested in real estate securities "for the benefit of the plaintiffs," children of James, "to be distributed between them when they respectively arrive at age." There is not only no provision for payment of this sum to Jasper, but it is provided that the securities shall "be prepared, ready to execute before it shall be payable." The further provisions in the mortgage for the payment to other parties in the event of the death of these children, or either of them, before they become of age, and the right reserved to the mortgagor to have the mortgage discharged upon executing other securities upon the same condition, exclude the idea of other power on the part of Jasper, or of any intent that he should receive the money or deal with the matter in any way after those children became of age. It was after that event happened to all, that the defendant Webster paid, and Jasper received the money which should have been paid to them. The power to enforce the mortgage for so much of the debt as was so payable, vested in the plaintiffs and by statute was made part of their security. (1 R. S., tit. 2, art. 3, chap. 1, pt. 4, p. 737, § 133.) If, therefore, upon default of Webster, an action had been brought by Jasper, it must be presumed that the plaintiffs' rights would have been protected against a payment by the mortgagor in violation of the terms of the mortgage, and it cannot be supposed the court would either have authorized the receipt of money in place of securities for the infants, or, after their majority, have allowed money payable to them to go to the hands of Jasper. As to them he had ceased to be a trustee, or, if not, he had no right to change the essential provisions of the trust, far less to annul the trust itself, and in dealing with him in contravention of its terms and of his duty, the defendants took the risk.

(*Swift* v. *Smith*, 102 U. S. 442; *McPherson* v. *Rollins*, 107 N. Y. 316.)

The learned counsel for the appellants also argues that Webster is protected by the provision of section 66, 1 Revised Statutes, page 730, title 2, part 11, chapter 1, article 2. It also seems inconclusive. "No person," it says, "who shall actually and in good faith pay a sum of money to a trustee, which the trustee as such is authorized to receive, shall be responsible for the proper application of such money, according to the trust; nor shall any right or title derived by him from such trustee, in consideration of such payment, be impeached or called in question, in consequence of any misapplication by the trustee, of the moneys paid." What authority had Waterman to receive the payment? If the above views are correct he had no authority, and as Webster acted in violation of the agreement embodied in his mortgage, he cannot be deemed to have acted in good faith in making payment. The lien in question was not for the benefit of the mortgagor; he had been separately provided for and was fully paid. It was created for the benefit of the plaintiffs by the direction of their father, from whom the consideration moved, and with the concurrence of the defendants. It remained, notwithstanding the fraud or mistake by which the defendants were actuated in placing a formal discharge upon the record, and whether it was by one or the other the plaintiffs should not suffer. The mortgage had for its object the benefit of the plaintiffs. They were the persons intended to be benefited, and were so named. For this reason also they are entitled to maintain this action.

We think the court below committed no error, and that the judgment appealed from should be affirmed.

All concur.

Judgment affirmed.