David Goldstein, Respondent, v Frances Gold et al., Defendants, and Paul Adler, Appellant.

Second Department, December 31, 1984

### APPEARANCES OF COUNSEL

*Dollinger, Gonski & Grossman (Dennis Gonski* of counsel), for appellant.

*Wilbur G. Silverman* for respondent.

### OPINION OF THE COURT

Titone, J. P.

In this action brought to set aside a fraudulently obtained satisfaction of mortgage, Paul Adler, the intervening defendant who purchased the property encumbered by the mortgage, appeals from stated portions of a judgment of the Supreme Court, Queens County, which, among other things, canceled the satisfaction and declared the mortgage to be a valid lien. Analysis of the priorities mandated by the recording acts persuades a majority of this court to conclude that the intervening defendant is bound by a notice of pendency filed prior to the recording of his deed and the satisfaction piece and that there is no basis to invoke an estoppel against the plaintiff. The loss should fall where it belongs — on a negligent title company. Therefore, we affirm the judgment insofar as appealed from.

The underlying facts illustrate the ensnaring "tangled web we weave * * * [w]hen first we practice to deceive" (Sir Walter Scott, Marmion, Canto VI, Stanza 17). In 1979, plaintiff Goldstein loaned to his stepmother, defendant Frances Gold, some $22,000, securing the loan by a recorded mortgage on real property which she owned. Two years later, Ms. Gold requested that plaintiff sign a satisfaction of mortgage as she desired to sell the property. Contrary to his stepmother's representations, however, a purchaser had already been found and a closing date set. When Ms. Gold refused to return the satisfaction piece, plaintiff commenced this action and duly filed a notice of pendency in the Queens County Clerk's office.

It appears that the closing on the property took place about an hour prior to the filing of the notice of pendency. At that time, the satisfaction of mortgage was exhibited to the representative of the title insurance company who, without taking an escrow or other security pending its recording, simply marked the lien off the company's exception sheet. The satisfaction piece and deed to Paul Adler, the purchaser and intervening defendant, were, of course, recorded subsequent to the notice of pendency.

While Ms. Gold initially appeared in the action, filing an answer and conceding that no payments had ever been made to the plaintiff, she defaulted at the time of trial. The purchaser, who had intervened, urged, however, that the mortgage should be deemed satisfied insofar as his interests were concerned. Trial Term disagreed, as do we, though not for the reasons expressed at nisi prius.

We are all in agreement that a fraudulently obtained satisfaction of mortgage may be set aside and the mortgage restored as a valid lien (*Vohmann v Michel,* 185 NY 420; *Waterman v Webster,* 108 NY 157; *Fassett v Smith,* 23 NY 252; *Weaver v Edwards,* 39 Hun 233, affd 121 NY 653; *Headley v Goundry,* 41 Barb 279; 5 Tiffany, The Law of Real Property [3d ed], § 1493). In light of the stepmother's admission, it is equally plain that the elements of fraud have been established (*Weaver v Edwards, supra; Waterman v Webster, supra; Fassett v Smith, supra;* 5 Tiffany, The Law of Real Property [3d ed], § 1493). The question, then, is whether this determination is binding on the purchaser. The majority concludes that, by virtue of the recording acts, it is.

New York has a so-called "race-notice" recording statutory scheme (Real Property Law, § 291; 4 American Law of Property [1952 ed], § 17.5; 4A Warren's Weed, New York Real Property, Recording, §§ 1.01, 1.03, 1.04). In other words, in order to cut off a prior lien, such as a mortgage, the purchaser must have no

knowledge of the outstanding lien *and* win the race to the recording office (6A Powell, Real Property, par 905 [1]; 4A Warren's Weed, New York Real Property, Recording, § 1.04). Adler loses on both counts.

When, as here, a notice of pendency is filed, a purchaser is charged with constructive notice of litigation if he fails to record the deed prior to the filing of the notice of pendency. "A person whose conveyance or incumbrance is recorded after the filing of the notice is bound by all proceedings taken in the action after such filing to the same extent as if he were a party" (CPLR 6501; see *Grid Realty Corp. v Winokur,* 43 NY2d 956; *Corporation of Presiding Bishop of Church of Jesus Christ of Latter-Day Sts. v Solow Bldg. Corp.,* 52 AD2d 533, 534; 4 American Law of Property [1952 ed], § 17.9). That the purchaser lacks actual knowledge of the filing is irrelevant as the principle underlying the doctrine of notice of pendency "does not rest upon the presumption of notice but upon reasons of public policy, manifested by the language of the section" (*Kestler v Weissenfels,* 247 App Div 888, 889). By merely filing a notice of pendency, the "world [is put] on notice of the plaintiff's potential rights in the action and * * * warning all comers that if they then buy the realty * * * or otherwise rely on defendant's right, they do so subject to whatever the action may establish as the plaintiff's right" (Siegel, NY Prac, § 334, p 408; see, also, 13 Carmody-Wait 2d, NY Prac, § 87:73; Osborne, Mortgages [2d ed], § 222, p 436).

Perceived equities in favor of a purchaser are thus of no moment. The purchaser stands in the shoes of the vendor and can obtain no better title than the vendor (*Grid Realty Corp. v Winokur, supra,* p 957; *Marden v Dorthy,* 160 NY 39, 60; *Crocker v Lewis,* 144 NY 140, 142-143; *Levine v Carr,* 33 Misc 2d 425, 426; 13 Carmody-Wait 2d, NY Prac, § 87:75). In other words, the purchaser's "good faith" is not pertinent; at issue is the vendor's acts vis-à-vis the plaintiff filing the notice of pendency, *not* the purchaser's rights (see *Lawrence v Conklin,* 17 Hun 228; 4 American Law of Property [1952 ed], § 17.9). We are cited to no authority which would permit a purchaser to abrogate these principles simply by electing to intervene in the underlying action and our independent research fails to disclose any.

This is not to say, however, that such equities would not be relevant, or even controlling, in other circumstances, such as where no notice of pendency is filed or the satisfaction is recorded prior to the closing (see *Wittenbrock v Parker,* 102 Cal 93; *McConnell v American Nat. Bank,* 59 Ind App 319, 324; *Heyder v Excelsior Bldg. Loan Assn.,* 42 NJ Eq 403; Ann., 35 ALR2d 948, 956, § 6; cf. *Cornell v Maltby,* 165 NY 557). As put by the New

Jersey court in *Heyder,* when "through [a mortgagee's] negligence, the record is permitted to give notice to the world that his claim is satisfied, he cannot, in the face of his own [negligence], have his mortgage enforced against a *bona fide* purchaser, taking his title on the faith that the registry is discharged" (*Heyder v Excelsior Bldg. Loan Assn., supra,* p 408).

In *Heyder* (*supra*) and every other case we have found "the mortgagee [was] * * * responsible for the mortgage being released *of record*" (*McConnell v American Nat. Bank,* 59 Ind App 319, 324, *supra;* emphasis supplied; see, also, *Wittenbrock v Parker, supra; Knickmeier v Fleer,* 185 SW2d 57, 61 [Mo App]; *Peek v Wachovia Bank & Trust Co.,* 242 NC 1, 19; 5 Tiffany, The Law of Real Property [3d ed], § 1493; 59 CJS, Mortgages, § 282, subd d, p 353) and application of an estoppel was consistent with maintaining the integrity of the recording act. We decline the invitation to extend these authorities to situations in which reliance is placed on an unrecorded instrument and the purchaser loses the race to the recording office (see 4 American Law of Property [1952 ed], § 17.9; 4A Warren's Weed, New York Real Property, Recording, § 1.04). To do so would, in the majority's view, judicially transform our "race-notice" recording statute to a pure "notice" statute (see Casner & Leach, Cases and Text on Property [2d ed], p 806; 6A Powell, Real Property, par 905). In short, because Adler did not rely on a recorded document, the race-notice aspect of our recording statute precludes him from becoming a bona fide purchaser for value and, therefore, he cannot cut off the prior mortgagee (see *Marden v Dorthy, supra*).

Moreover, the fault in this case rests squarely on the shoulders of the title insurance company. Its search revealed plaintiff's mortgage and, as indicated, in order for it to obtain the protections of the recording act for its insured, the satisfaction would have had to have been recorded (see Real Property Law, §§ 291, 321; cf. *Andy Assoc. v Bankers Trust Co.,* 49 NY2d 13, 22; *Larned v Donovan,* 84 Hun 533, affd 155 NY 341; *Bacon v Van Schoonhoven,* 87 NY 446). The dissent's protestation that a continuation search would have been fruitless misses the mark. Lack of knowledge is only the first hurdle which must be met under a race-notice recording act. The purchaser still must win the race to the recording office.

Consequently, the title insurance company should have held the mortgage money in escrow or delayed the closing until the satisfaction had been recorded or required the mortgagee to appear at the closing, all standard practices (2 Harvey, Law of Real Property and Title Closing, §§ 583, 583.01) which are

particularly "important [to follow] when the original mortgagee is a private person, as distinguished from an institutional lender" (2 Harvey, *op. cit.,* § 583.01). Due to its negligence in failing to do so, the title company, in accordance with its contractual obligation to the purchaser under the title policy, will ultimately bear the loss.

For the reasons stated, the judgment should be affirmed insofar as appealed from, with costs.

RUBIN, J. (dissenting). In my opinion, the filing of a notice of pendency under the circumstances of this case does not preclude the application of the equitable rule that where one of two innocent parties must suffer from the perpetration of a fraudulent act, the party who enabled the act to be done must suffer the loss. In accordance with this rule, the intervening defendant acquired title to the subject premises free of the plaintiff's mortgage. Therefore, the judgment should be reversed insofar as appealed from, and the mortgage canceled of record.

Since the satisfaction piece and deed to Paul Adler, the intervening defendant, were recorded after plaintiff filed the notice of pendency, the majority is of the opinion that CPLR 6501 and the recording act (Real Property Law, § 291) preclude Adler from becoming a bona fide purchaser for value. I respectfully disagree with my learned brethren.

A notice of pendency serves as constructive notice "from the time of filing of the notice only" (CPLR 6501). Since the closing was completed at approximately 11:00 A.M. on March 19, 1981 and the *lis pendens* was filed 35 minutes later, the *lis pendens* was constructive notice to the vendee of plaintiff's claim regarding the satisfaction piece 35 minutes after he had accepted the deed and paid his money. It would be highly inexpedient to extend the doctrine of constructive notice to these facts (see *United States v Detroit Timber & Lbr. Co.,* 200 US 321, 333).

The filing of a notice of pendency prior to the recordation of an instrument granting a superior title to the subject property is not conclusive of the substantive rights of the parties (see *Lamont v Cheshire,* 65 NY 30; *Nugent v Foley,* 137 NYS 705; *Merrick v Pattison,* 85 Wash 240; *Ainslie v Moss,* 191 Wash 625).

The function of a notice of pendency is to carry out the common-law doctrine, *pendente lite, nihil innovetur (Lamont v Cheshire, supra,* p 36). At common law, the purpose of this doctrine was to prevent the acquisition *pendente lite* of an interest in the subject matter of the suit to the prejudice of the plaintiff. It is simply a rule to give effect to the rights ultimately established by the judgment. The doctrine, adopted by courts of

equity, had its roots in public policy, and does not rest, as is sometimes supposed, on the equitable doctrine of notice binding on the conscience (*Hailey v Ano,* 136 NY 569; *Lamont v Cheshire, supra*). Were it not for this doctrine, a plaintiff's rights would be defeated by the defendant's alienation of the subject property before the judgment was rendered. Such a result would force a plaintiff to commence his proceeding *de novo* against the alienee, subject again to being defeated by a similar course of proceedings (*Lamont v Cheshire, supra; Hailey v Ano, supra; Israelson v Bradley,* 308 NY 511; see, also, 7A Weinstein-Korn-Miller, NY Civ Prac, par 6501.01).

Absent the common-law doctrine, there would be no end to any suit; the justice of the court would be evaded, and the suitor would incur great hardship and inconvenience. Therefore, it was necessary to the administration of justice that the decision of a court should be binding not only on the litigant parties, but on those who derive title from them, *pendente lite,* whether with notice of the suit or not (*Lamont v Cheshire, supra,* p 36). With the enactment of section 132 of the former Code of Procedure (Field), the Legislature made the common-law doctrine applicable to a conveyance executed prior to and recorded subsequent to filing of the notice. This innovation was retained by the present notice of pendency statute (see CPLR 6501). The primary reason for this innovation was to include within the scope of the common-law doctrine a class of controversies where a title inferior in right and subordinate to that of the plaintiff had not been put on record, but had accrued prior to the commencement of the action or of the filing of the notice. Under the common-law rule, it would be necessary to make the owner of such a title a party, as he did not acquire his interest during the pendency of the action. Since it was frequently difficult for the plaintiff to ascertain the fact that such a sale had taken place, the statute made such an inquiry unnecessary. Although the statute also applied to cases of unrecorded rights superior to those of the plaintiff, it only affected them in such a way as they would be influenced if the owners were parties to the action (*Lamont v Cheshire, supra; Kursheedt v Union Dime Sav. Inst.,* 118 NY 358, 363).

The notice of pendency statute does not necessarily operate to give the plaintiff who files a notice of pendency an interest in the property superior to the holder of an unrecorded instrument (*Lamont v Cheshire, supra; Nugent v Foley, supra*).

In a case where the plaintiff has knowledge of the unrecorded interest, courts have held that the mere filing of the notice of

pendency will not permit the plaintiff to prevail over the holder of the unrecorded interest (see *Lamont v Cheshire, supra; La Marche v Rosenblum,* 50 AD2d 636). In *Lamont v Cheshire* (*supra*), certain attachments were levied against real property by the plaintiff's filing of a notice of pendency. Prior to the filing of the notice, the defendant had conveyed the property sought to be attached to a third party by deed. However, the deed was not recorded until after the plaintiff filed the notice of pendency. Since the plaintiff had knowledge of the unrecorded interest at the time he filed the notice of pendency, the court held that the attaching creditor did not acquire a lien superior to the interest of the grantee under the unrecorded deed merely by filing a notice of pendency. Even if the plaintiff had taken legal title under the Sheriff's deed, the court would have held that plaintiff's title was subordinate in equity to the holder of the unrecorded deed. The reason is that the plaintiff, having notice of the unrecorded interest, is viewed to have purchased the land subject to whatever rights it might turn out that the defendant was entitled to in equity. In equity, an unregistered deed is to be preferred to a subsequent registered deed taken by a subsequent purchaser with notice (see *Reed v Barkley,* 123 Misc 635). It should be noted that the recording acts recognize this preference by denying priority to the party who wins the race to record his deed or encumbrance, but does so with knowledge of an unrecorded interest (see Real Property Law, § 291).

Thus, where the plaintiff's interest is subordinate in equity to the interest of the holder of an unrecorded instrument, the filing of a notice of pendency does not operate, *ipso facto,* to make the plaintiff's interest superior to the latter's interest.

Although there is no proof in the record on appeal that plaintiff actually knew that Paul Adler had purchased the subject property when the notice of pendency was filed, plaintiff's interest was, at that point in time, subordinate in equity to Adler's unregistered deed pursuant to another rule in equity, i.e., where one of two innocent parties must suffer, he who has put it in the power of a third person to commit the fraud must sustain the loss (*Cornell v Maltby,* 165 NY 557; cf. *Marden v Dorthy,* 160 NY 39; see, also, 20 NY Jur, Equity, § 118).

In the instant case, plaintiff executed the satisfaction of mortgage and delivered it to the mortgagor with the express purpose and intent of enabling the mortgagor to sell the property in question from which proceeds the plaintiff expected to be paid. In effect, the satisfaction was executed and delivered by plaintiff to induce a bona fide vendee, such as the intervening defendant,

to purchase the property free of the encumbrance of his mortgage. Although the plaintiff was procured to execute and deliver the satisfaction by the fraudulent representations of the mortgagor, he is chargeable with negligence. Consequently, plaintiff's negligence estops him from denying the validity of the satisfaction as against an innocent party who acted to his prejudice upon the faith of the instrument (see *Cornell v Maltby, supra,* p 562; *Marden v Dorthy, supra; Valentine v Lunt,* 115 NY 496; cf. *Page v Krekey,* 137 NY 307 [negotiable instrument]; *Chapman v Rose,* 56 NY 137 [negotiable instrument]). Not only was plaintiff negligent in executing and delivering the satisfaction to the mortgagor, he also unreasonably delayed in filing the notice of pendency which would have alerted an innocent buyer, such as Adler, to the fraud being perpetrated by the mortgagor. Plaintiff suspected that his stepmother's and stepbrother's representations were fraudulent a few days after he executed and delivered the satisfaction as evidenced by the fact that he conversed with his vacationing attorney in the beginning of the first week of March and, immediately thereafter, demanded the return of the satisfaction. When his stepmother and stepbrother refused to return the satisfaction, plaintiff delayed almost two weeks, until the return of his attorney, before filing the notice of pendency. By so delaying the filing of a notice of pendency with reason to believe that he had been fraudulently induced to execute and deliver the satisfaction to the mortgagor and that an innocent purchaser would rely on the satisfaction, plaintiff allowed Adler to become a victim of the mortgagor's fraud.

In *Heyder v Excelsior Bldg. Loan Assn.* (42 NJ Eq 403), the mortgagor fraudulently secured the mortgage's cancellation of record, due to the negligence of the mortgagee, and then sold the subject property to a bona fide purchaser as free from encumbrance. Applying the aforenoted rule of equity, the New Jersey Court of Appeals held that the mortgagee, not the purchaser, should bear the loss incident to the fraudulent cancellation of the mortgage. The decision reads, in pertinent part (pp 407-410):

"Between a mortgagee, whose mortgage has been discharged of record, solely through the unauthorized act of another party, and a purchaser who buys the title in the belief, induced by such cancellation, that the mortgage is satisfied and discharged, the equities are balanced, and the rights in the order of time, must prevail. The lien of the mortgage must remain, despite the apparent discharge.

"But this is apart from any default attributable to the holder of the lien. If, through his negligence, the record is permitted to

give notice to the world that his claim is satisfied, he cannot, in the face of his own carelessness, have his mortgage enforced against a *bona fide* purchaser taking his title on the faith that the registry is discharged.

"Where one gives to another the power to practice a fraud upon innocent parties, the court will not interfere in his protection at the expense of those who have been deceived and misled by such fraud * * *

"I do not think that any circumstance presented in this case made it the appellant's duty, in order to avail himself of the rights of a *bona fide* purchaser, to institute personal inquiry of the mortgagee. Any rule placing him under this exaction would embrace every case of a purchase of lands that had ever been subject to mortgage, which the record showed to be canceled. Such a rule, it is needless to say, would render this provision of the registry act entirely nugatory. A purchaser could then only buy with safety when the registry had been discharged, and an admission of payment obtained from the mortgagee. Doubtless, circumstances may, and frequently do, arise to put the purchaser upon inquiry, and charge him with notice. It seems to me that nothing appears in this transaction which should have put this purchaser upon further inquiry. He was permitted to rely upon the record. He did so, purchasing upon the belief that it spoke the fact truly. It was false, but the deception was directly traceable to the culpable negligence of the mortgage owner, and the loss should fall upon the party chargeable with the fault."

The majority concedes that this rule of equity would be applicable in the instant case had Paul Adler, the vendee, relied on a recorded satisfaction piece. However, because the mortgage was recorded and no discharge appeared on the record, the majority concludes that Adler could not be considered a bona fide purchaser under the recording act. Additionally, the majority concludes that the title insurance company, the vendee's agent, was negligent in not taking an escrow or other security pending the recording of the satisfaction and that said negligence also bars Adler from consideration as a bona fide purchaser for value.

The recording act reflects a legislative presumption that a recorded instrument constitutes notice to a subsequent purchaser (*Doyle v Lazarro*, 33 AD2d 142, affd 33 NY2d 981; *Williamson v Brown*, 15 NY 354, 359). Since plaintiff's mortgage was recorded, Adler is deemed to have constructive notice that the mortgage was not discharged even if he had checked the records and had failed to discover the encumbrance or had neglected to check the records (see *Doyle v Lazarro, supra*). Here,

Adler concedes that a title search disclosed plaintiff's mortgage. Therefore, Adler had no right to assume, without making a reasonably diligent inquiry, that the mortgage was paid (cf. *Geib v Reynolds,* 35 Minn 331; *Windle v Bonebrake,* 23 F 165). However, Adler did make an inquiry before purchasing the premises.

In the instant case, the mortgagor, who is the mortgagee's stepmother, produced a satisfaction of the mortgage, which had been executed and delivered to her by the mortgagee, as evidence that the mortgage was discharged. According to Adler's attorney, a representative from the title company, retained by Adler, made a call to her company during the closing, and as a result of that call, marked omitted on the title report with reference to plaintiff's open mortgage. Plaintiff also read into evidence Adler's verified answer to an interrogatory which stated that a continuation search had been made by his agent, the title insurance company, on March 19, 1981, the day of the closing. The inference to be drawn from this testimony is that a continuation search had been conducted at the closing, which did not disclose a notice of pendency regarding plaintiff's claim that he had been fraudulently induced to execute the satisfaction without receiving payment. Based on the chronological sequence of events, it is obvious that a continuation search conducted at the closing would not have revealed the after-filed notice of pendency. After having conducted a reasonably diligent inquiry in the form of a continuation search, the record provided no reason for Adler or the title company's representative to suspect the validity of the satisfaction, which had been executed and delivered to the mortgagor by the mortgagee. Under these circumstances, neither Adler nor the title insurance company were guilty of a degree of negligence that would preclude Adler from being considered a bona fide purchaser. Adler reasonably relied on the satisfaction and, although it was a product of fraud, the fraudulent act was directly traceable to the culpable negligence of the mortgagee, the plaintiff herein. Therefore, the loss should fall upon the party chargeable with the fault, the mortgagee.

MANGANO and EIBER, JJ., concur with TITONE, J. P.; RUBIN, J., dissents and votes to reverse the judgment insofar as appealed from, with an opinion, in which BOYERS, J., concurs.

Judgment of the Supreme Court, Queens County, entered July 26, 1983, affirmed insofar as appealed from, with costs.