**NITCHIE BARRETT REALTY CORP., Plaintiff,**

v.

**Abraham BIDERMAN, individually and as Commissioner of Finance of the City of New York, and the City of New York, Defendants.**

No. 87 CIV. 4756 (SWK).

United States District Court, S.D. New York.

Dec. 27, 1988.

Corporation Counsel, New York City by Jeffrey Schanback, Gary Marton, for plaintiff.

Michael Stepper, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

This action is brought pursuant to 42 U.S.C. § 1983. Plaintiff, Nitchie Barrett Realty Corp. ("Nitchie Barrett"), complains that Abraham Biderman and the City of New York ("the defendants") deliberately deprived it of its property without due process of law in violation of the fourteenth amendment of the United States Constitution. The defendants move for summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure. In addition, the defendants request sanctions, attorneys' fees, costs and disbursements. Nitchie Barrett has cross-moved for summary judgment seeking declaratory judgment that it is the rightful owner of 103 West 127th Street (the "Property"), and injunctive relief divesting the City of New York and all others of any claim, right, or title to the Property. Nitchie Barrett also requests actual and exemplary damages, as well as costs, disbursements and attorneys' fees. For the reasons set forth below this Court grants defendants' motion for summary judgment dismissing the complaint and denies plaintiff's motion for summary judgment. This Court also denies all motions for attorneys' fees, sanctions, costs and disbursements.

## BACKGROUND

The material facts are not in dispute. On or about March 14, 1986, Nitchie Barrett purchased a six story tenement building located at 103 West 127th Street, in the City, County and State of New York. For tax purposes 103 West 127th Street is also known as Block 1912, Lot 26. On or about April 1, 1986 Nitchie Barrett duly recorded its interest in the property with the County Clerk for New York County.

On or about April 27, 1982, prior to Nitchie Barrett's purchase of the property, Josiah B. Whyte, principal of 103 W. 127 St. Corp. (Nitchie Barrett's predecessor in title), entered into an *In Rem* Installment Agreement (the "agreement") with the De-

partment of Finance to discharge the delinquency of $18,000.00 in back taxes, sewage and water charges and emergency repair liens on the property. The agreement provided, *inter alia*, that the parcel might be included in future tax foreclosure actions.[1] However, so long as the requisite installment and current charges were timely paid the City would not foreclose on the property.[2] In the event of a default as to any payment due under the agreement, the agreement became null and void and provided that the property would be eligible for foreclosure. *See* Declaration of Gary F. Marton, Exhibit A, ¶¶ 2, 5 ("Marton Aff.").

On June 9, 1982, the City of New York began an *In Rem Foreclosure Action No. 31, Borough of Manhattan,* Index No. 4600/82, ("Manhattan Action No. 31"), to foreclose upon approximately 5,635 tax delinquent parcels. The action was commenced pursuant to Title D, Chapter 17 (now, Title 11, Chapter 4) of the Administrative Code of the City of New York, by filing in the County Clerk's office of New York County two duplicate lists of delinquent taxes. The parcel at 103 West 127th Street was included in Manhattan Action No. 31. On July 29, 1985, the City obtained a judgment of foreclosure in Manhattan Action No. 31. Pursuant to Admin.Code § 11–409(g), 103 West 127th Street was severed from the action due to the installment agreement. On or about December 10, 1986, the Department of Finance cancelled the agreement because current charges were not timely paid constituting a default.

On or about March 6, 1987, notice of the cancellation of the agreement was mailed to Mr. Whyte advising him that unless all arrears were paid by March 20, 1987 (later extended to March 27, 1987) the City would begin foreclosure proceedings. No notice was mailed to Nitchie Barrett. On April 23, 1987, the City took title to 103 West 127th Street pursuant to a deed executed in conformity with a judgment of foreclosure entered on that date in the Supreme Court of the State of New York, New York County. The deed was duly recorded on April 24, 1987.

In mid-July, the defendants' attorney notified plaintiff's counsel that it could automatically regain title to 103 West 127th Street pursuant to Admin.Code § 11–424(f). The period to regain title automatically expired on August 24, 1987. To the knowledge of this Court Nitchie Barrett did not apply for release. In addition, Nitchie Barrett has not paid taxes on the property since its acquisition. *See* Defendants' Notice of Motion Exhibit 9.

## DISCUSSION

### Standards for Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law". Fed.R. Civ.P. 56(c). In testing whether the movant has net this burden, the Court must resolve all ambiguities against the movant. *Lopez v. S.B. Thomas, Inc.,* 831 F.2d 1184, 1187 (2d Cir.1987) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)). Since the parties agree that there are no genuine issues of fact the question before this Court is simply a legal one.

### Section 1983 Claim

The plaintiff complains that the defendants' actions, taking plaintiff's property by foreclosure and failing to provide notice

**1.** The Preamble of the *In Rem Installment Agreement* states in pertinent part:
"the above-described parcel is now included or may hereafter be included in a List of Delinquent Taxes or an In Rem Foreclosure Action pursuant to the provisions of Title D of Chapter 11 of the Administrative Code of the City of New York".

**2.** Paragraph 2 of the agreement reads in pertinent part:
"and there has been no default as to quarterly installments, current taxes or other legal charges, then the parcel shall be excluded or removed from the List of Delinquent taxes before the commencement of the action".

violated 42 U.S.C. § 1983 [3] by depriving plaintiff of its property without due process of law in violation of the fourteenth amendment.[4] The defendants argue that plaintiff was not entitled to notice as a matter of law, and thus, plaintiff has not been deprived of its property without due process.

The plaintiff contends that, under *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 800, 103 S.Ct. 2706, 2712, 77 L.Ed. 2d 180 (1983) and *Mullane v. Central Hanover Bank*, 339 U.S. 306, 313, 70 S.Ct. 652, 656–57, 94 L.Ed. 865 (1950), it was entitled to notice prior to the tax foreclosure action. In *Mullane, supra,* the Supreme Court established that "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." 339 U.S. at 314, 70 S.Ct. at 657. The *Mullane* Court stated that whether a particular method of notice is reasonable depends on the outcome of the balance between the interest of the State and the individual interest sought to be protected by the Fourteenth Amendment. *Id.* at 314, 70 S.Ct. at 657.

In *Mennonite, supra,* the Supreme Court, applying the principles established in *Mullane,* held that notice to the property owner and notice by publication were not reasonably calculated to inform a mortgagee of record of the tax sale. 462 U.S. at 799, 103 S.Ct. at 2712. The plaintiff in *Mennonite* was the mortgagee at the time the action was commenced and did not learn of the sale until after the redemption period expired. *Id.* at 798, 103 S.Ct. at 2711. The *Mennonite* Court reasoned that notice to the property owner, who is not in privity with his creditor and who has failed to preserve his own property interest, cannot be expected to lead to actual notice to the mortgagee. *Id.* at 799, 103 S.Ct. at 2711–12. The *Mennonite* decision, however, requires only that notice be sent to a "reasonably ascertainable" party with an interest in the property at the time the action commenced. *Modray Realty, Inc. v. City of New York*, 85 Civ. 7000 (JMC), slip op. at 3 (S.D.N.Y. Sept. 10, 1985), *aff'd mem.*, 85 Civ. 9005, slip op. (2d Cir. March 25, 1986) (the court held that under *Mennonite* a mortgagee by assignment, was not entitled to notice of tax foreclosure action where mortgagee acquired its interest subsequent to the commencement of the action and filing of lis pendens).

■ In the present case, the defendants instituted Manhattan Action No. 31 in 1982. The tax foreclosure proceeding was commenced by the filing of lists of delinquent taxes, which also served as the equivalent of notices of pendency,[5] putting subsequent purchasers on notice of the proceedings.

---

**3.** 42 U.S.C. § 1983 states in pertinent part:
"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress …"

**4.** Section 1 of the fourteenth amendment states in pertinent part:
"… nor shall any State deprive any person of life, liberty, or property, without due process of law …"

**5.** A notice of pendency provides notice that an action is pending which may affect title to real property. C.P.L.R. § 6501. A person whose conveyance or incumbrance is recorded after the filing of a notice of pendency is bound by all proceedings taken in the action, after the filing of the notice of pendency, to the same extent as if he were a party. *Goldstein v. Gold,* 106 A.D. 2d 100, 483 N.Y.S.2d 375, 378 (2d Dept.1984), *aff'd,* 66 N.Y.2d 624, 495 N.Y.S.2d 32, 485 N.E. 2d 239 (1985). The fact that the purchaser lacks actual knowledge of the filing is irrelevant because the principle underlying the doctrine of notice of pendency does not rest upon the presumption of notice but upon reasons of public policy. *Id.* 483 N.Y.S.2d at 378. By merely filing a notice of pendency, the world is put on notice of the plaintiff's potential rights in the action and warning all other parties that if they buy the realty, they do so subject to whatever the action may establish as the plaintiff's rights. *Id.* at 378.

Admin.Code § 11–405(d).[6] *See also In the Matter of Tref Realty, Inc., v. City of New York,* 135 A.D.2d 862, 522 N.Y.S.2d 954, 955 (2d Dept.1987), *appeal dismissed,* 72 N.Y.2d 833, 530 N.Y.S.2d 551, 526 N.E.2d 42 (1988) (plaintiff, a mortgagee by assignment, was not entitled to notice of the tax foreclosure because plaintiff acquired the property five months after the tax foreclosure proceeding was instituted). Nitchie Barrett did not acquire its interest in the property until 1986, subsequent to both the commencement of the action and filing of the delinquent tax lists. This Court finds that the delinquent tax lists provided Nitchie Barrett with notice of the foreclosure action at the time it purchased the property. Therefore, Nitchie Barrett would not be entitled to notice of the foreclosure action as a matter of law and would bound by the results of Manhattan Action No. 31. *See Mennonite, supra,* 462 U.S. at 798, 103 S.Ct. at 2711; *Modray Realty, supra,* Slip op. at 3; *In the Matter of Harland Properties v. Biderman,* No. 18454–87, slip op. at 2 (N.Y.Sup.Ct. June 17, 1986). The *Harland Properties* Court dealt with precisely the same issue and parties that are before this Court. In that case, the plaintiffs sought to vacate title to several parcels acquired by the City of New York pursuant to an *in rem* tax foreclosure, the same Manhattan Action No. 31. The plaintiffs alleged that Manhattan Action No. 31 was defective because the City failed to provide notice by publication and notice by mail denying them due process of law. No. 18454–87 at 2. The *Harland Properties* court held that since plaintiffs did not acquire their interest in the properties until 1985 and 1986, three to four years after the commencement of Manhattan Action No. 31, they were not entitled to notice as a matter of law and bound by the results of Manhattan Action No. 31 by reason of the notice of pendency that the City filed therein. *Id.* at 3.

Nitchie Barrett argues, however, that it cannot be charged with knowledge of the 1982 tax proceeding by reason of the delinquent tax list, which acts as the functional equivalent of a notice of pendency, because pursuant to § 6513 of the Civil Practice Law and Rules ("C.P.L.R. § 6513") the notice of pendency, expired on or about June, 1985, before Nitchie Barrett acquired its interest in the property. C.P.L.R. § 6513 states as follows:

A notice of pendency shall be effective for a period of three years from the date of filing. Before expiration of a period or extended period, the court, upon motion of the plaintiff and upon such notice as it may require, for good cause shown, may grant an extension for a like additional period. An extension order shall be filed, recorded and indexed before expiration of the prior period.

C.P.L.R. § 6513. The defendants counter that this three-year time bar is inapplicable to Admin.Code § 11–405's notice of pendency equivalent. The defendants argue that the *in rem* tax foreclosure procedures, codified in the Admin.Code, were designed to provide an expeditious method to collect delinquent taxes. *See* Defendants' Reply Memorandum p. 6 ("Reply Memo"). The defendants argue further that this objective would be defeated if *in rem* proceedings had to be prosecuted as if they were actions between private litigants. *See* Reply Memo p. 7.

This Court agrees. The *in rem* tax foreclosure section to the Administrative Code sets out a detailed procedure for the City of New York to bring *in rem* tax foreclosure actions that differ from actions brought pursuant to the C.P.L.R. between private litigants. C.P.L.R. § 6513 mandates procedures to extend a notice of pendency for additional periods upon a showing of good cause. The presumption

---

**6.** Section 11–405 of the Admin.Code, Preparation and filing of lists of delinquent taxes, subsection (d) reads in pertinent part:

"... two duplicate originals thereof, ... shall be filed in the office of the clerk of the county in which the parcels listed therein are situated. Such filing shall constitute and have

the same force and effect as the filing and recording in such office of an individual and separate notice of pendency of action ... to enforce the payment of the delinquent taxes, assessments or other lawful charges which have accumulated and become liens against such parcels".

behind C.P.L.R. § 6513 is that the action, which is the subject of the notice of pendency, is stale and meritless if it has not reached a conclusion within that timespan. The Administrative Code, on the other hand, contemplates that *in rem* proceedings will continue against some parcels, possibly thousands, for more than three years without becoming meritless or stale. *See* Admin.Code §§ 11–405(c)(1), 11–405(c)(2), 11–405(c)(3), 11–424(g). As defendants point out, thousands of parcels involved in the commencement of a tax foreclosure action are subject to installment agreements that last longer than three years. To require the City of New York to move for an extension of a notice of pendency upon a showing of good cause is not only burdensome and expensive but inconsistent with the spirit of the Administrative Code. Consequently, this Court concludes that C.P.L.R. § 6513 does not apply to § 11–405 of the Admin.Code.

█ This conclusion is consistent with the due process requirements enunciated in *Mullane* and *Mennonite*. The filing of the list of delinquent taxes is reasonably calculated to apprise all subsequent purchasers of the pendency of the action. In this case, Nitchie Barrett was apprised of the action by the delinquent tax list from a title search it had done on the property prior to its acquisition.[7] Once informed of the agreement Nitchie Barrett could have filed with the City of New York an owner's registration card pursuant to § 11–416 of the Admin.Code to receive notice of any foreclosure action. This process is reasonable because it notifies all parties who acquire an interest subsequent to the commencement of the action and affords them

an opportunity to protect their interest. This Court finds that Nitchie Barrett had notice of the tax foreclosure action when it purchased the property in March of 1987 due to the filing of delinquent tax lists, the notice of pendency equivalent, in 1982. Therefore, Nitchie Barrett was not deprived of its property without due process of law.

█ Alternatively, this Court finds that Nitchie Barrett was not deprived of due process because the *Mullane* and *Mennonite* Courts were concerned with notice prior to proceedings that accorded finality to those transactions. In this case Nitchie Barrett was not finally dispossessed of its property. Nitchie Barrett could have automatically regained title to the property by request, pursuant to § 11–424(f) of the Admin.Code.,[8] and by discharging all liens on the property. The defendants notified Nitchie Barrett's counsel of this mandatory release provision and outlined the procedures to expedite the processing of the release application. *See* Marton Aff. ¶¶ 14, 16. Since Nitchie Barrett failed to avail itself of the right to redeem, Nitchie Barrett cannot now be heard to complain of a deprivation of due process. *In the Matter of Tax Foreclosure No. 35 City of New York*, 71 N.Y.2d 863, 527 N.Y.S.2d 747, 522 N.E.2d 1044 (1988) (court held that plaintiff's due process was not violated where the City took plaintiff's property without notice pursuant to a tax foreclosure action because plaintiff failed to avail himself of the opportunity to regain title to his property during the redemption period by paying the City all taxes, penalties and interest owing on the parcel).

---

7. Notification of the *In Rem* agreement was located in two places within the title report. First, in Schedule B, paragraph 19 which reads:

"premises are subject to an *In Rem* tax agreement. In the event payments are not made pursuant to said agreement, the city of New York may continue in the *In Rem* proceeding";

and second, the Tax Search page indicated that the parcel was subject to **IN REM AGREEMENT 15E** (emphasis in the original). *See* Defendants' reply to Plaintiff's Rule 3(g) Statement Exhibit B.

8. Section 11–424, Application to the city for release of property acquired by *in rem* tax foreclosure, subsection (f) reads in pertinent part: "[i]f an application pursuant to this section, and the documents required by subdivision c of this section in support thereof, are filed within four months after the date of the city's acquisition of the subject property, said application shall be granted providing the corporation counsel approves the application as to form, timeliness and eligibility of the applicant and providing the applicant has paid all amounts required to be paid by subdivision of this section d ..."

Nitchie Barrett argues that the redemption procedures are burdensome and expensive because in order to regain title, it would have to pay all taxes and charges due and owing on the property, including charges it is not responsible for such as liens that were placed upon the property for management costs. In light of the fact that Nitchie Barrett has not paid any taxes or charges that were due and owing on the property since its acquisition this Court finds that the redemption procedures are neither unfair nor unduly burdensome. Had Nitchie Barrett maintained its obligatory payments due under the installment agreement it would not be forced to pay now. Based upon the foregoing, this Court finds that plaintiff was not deprived of due process of the law because plaintiff seeks the same relief here that it could have obtained through administrative procedures during the redemption period. *In the Matter of Tax Foreclosure No. 35, supra,* 527 N.Y.S.2d at 747, 522 N.E.2d 1044.

## CONCLUSION

This Court grants defendants' motion for summary judgment dismissing the complaint and denies plaintiff's motion for declaratory and injunctive relief. All motions for sanctions, costs, disbursements and attorneys' fees are denied.

SO ORDERED.