Spain, J.
Appeal from an order of the Supreme Court (Krogmann, J), entered April 15, 2011 in Washington County, which, among other things, denied third-party defendants’ motions for summary judgment dismissing the third-party complaint.
In 1999, in the course of his employment for a nonparty subcontractor, plaintiff Malcolm Wolfe slipped on construction debris and fell down a flight of stairs at defendant Irving Tissue, Inc.’s mill in the Town of Fort Edward, Washington County. Thereafter, plaintiffs commenced this negligence action against Irving[1] seeking damages for injuries allegedly sustained in the fall. Irving then commenced a third-party action for contribu *1629 tion and indemnity against third-party defendant North Country Janitorial, Inc., which had contracted to provide janitorial services at Irving’s mill, and third-party defendant Rust Constructors, Inc., which, at the time of the accident, was subject to a “general services agreement” to provide “management services” at Irving’s mill. North Country subsequently asserted a cross claim for contribution and indemnity against Rust.
The third-party action was severed from plaintiffs’ original action, and Irving reached a settlement with plaintiffs. Following discovery, North Country and Rust both moved for summary judgment dismissing the third-party complaint,* [2] and Rust also moved for summary judgment dismissing North Country’s cross claim against it. Supreme Court denied the motions, prompting both North Country and Rust to appeal.
We affirm. North Country argues that its contract with Irving did not include an indemnification provision and, thus, it is under no duty to indemnify or insure Irving as a matter of law. In support of its motion, North Country relies on the undisputed fact that no signed document exists in which North Country agreed to indemnify or to provide insurance coverage to Irving. The record establishes that North Country had provided janitorial service at Irving’s mill in the past, and when Irving sent out a request for bids in January 1998, North Country immediately responded with a bid. Thereafter, North Country apparently began providing services in accordance with the terms of the bid. As neither Irving’s solicitation nor North Country’s bid included indemnification or insurance provisions, in our view, North Country satisfied its initial burden of proof, shifting the burden to Irving to present evidence demonstrating a triable issue of fact (see CPLR 3212 [b]; Zuckerman v City of New York, 49 NY2d 557, 562 [1980]).
In opposition, Irving relies on a purchase order it sent to North Country at the end of August 1998, wherein Irving requested that janitorial services be continued through the end of the year, and a second order sent in December 1998, requesting the same services for 1999. Each order expressly states that it is “subject to . . . the standard terms and conditions for purchase orders issued by Irving.” Irving’s “general terms and *1630 conditions” include indemnification and insurance provisions and, according to the affidavit of Irving’s former purchasing agent, the terms and conditions were attached to the purchase orders sent to North Country. Further, Irving submitted evidence that North Country secured an insurance policy in April 1999 reflecting the same policy limits as required in Irving’s terms and conditions. North Country denies having ever received a copy of Irving’s terms and conditions, and argues that, in any event, no material issue of fact exists precluding summary judgment because the parties’ contract — arguably formed in 1998 — could not unilaterally be changed by Irving’s subsequent purchase orders.
We concur with Supreme Court that summary judgment cannot be awarded on this record. Both Irving’s 1998 request for bids and North Country’s bid appear to anticipate a contract term of one year, which would have expired before plaintiffs accident in 1999. Further, a letter from Irving to North Country in May 1998 clearly indicates Irving’s intent to extend the parties business relationship through the end of 1998, indicating that the parties’ agreement had been for something less than a full year. When, at the end of 1998, Irving submitted another purchase order seeking janitorial services for 1999, Irving was making an offer to extend the parties’ contract. Whether Irving’s general terms and conditions were incorporated by reference into that offer, and whether North Country accepted those terms through its performance, are issues of fact which preclude a finding, as a matter of law, that the parties’ agreement did not include an indemnification provision (see Brighton Inv., Ltd. v Har-Zvi, 88 AD3d 1220, 1222-1223 [2011]; Robison v Sweeney, 301 AD2d 815, 817 [2003]).
We turn next to Rust’s argument that the third-party complaint against it should have been dismissed. Rust argues that, at the time of the accident, its contract with Irving did not include any supervisory duties over North Country or, alternatively, that any supervisory duties it had over North Country were shared by Irving and thus cannot be the basis for indemnification. The agreement between Rust and Irving contemplates that Rust will “provide management services to include the management and performance of maintenance related work for specific assets as well as the management of general services at various [Irving] sites.” Although the agreement does not specifically assign housekeeping duties to Rust, it also does not define “management services” or the “management of general services,” rendering it ambiguous in this regard.
Rust has failed to submit sufficient evidence to resolve this *1631 ambiguity as a matter of law. Indeed, Richard Zack, Rust’s site manager for the Irving facility, testified that “management services” included “running Irving[’s] boilers, water treatment plant, waste treatment plant, electrical distribution system as well as snow and external trash removal and general maintenance in those areas of operation.” Although he stated that housekeeping and janitorial services were not part of the agreement, and that such services were handled solely by North Country pursuant to North Country’s direct contract with Irving, he admitted that his duties included ensuring that the housekeeping work was completed. Additionally, the solicitation for bids that Irving sent to North Country clearly states that “[a] 11 work is supervised by Rust Plant Services” and Irving’s bid in response indicates that it is for “[cjleaning services to be rendered ... to Rust Plant Services (Irving Tissue Plant).” Zack also admitted that he helped Irving develop specifications for cleaning services to be used by Irving when negotiating its contract with North Country, that he had weekly meetings with North Country’s supervisor regarding the janitorial services, and that he signed weekly time sheets for North Country employees. Given that factual issues exist as to the extent, if any, that Rust’s management obligations included supervising North Country’s janitorial work, we hold that Supreme Court properly denied Rust’s motion for summary judgment dismissing the third-party complaint (see Staub v William H. Lane, Inc., 58 AD3d 933, 935 [2009]; United States Fid. & Guar. Co. v Delmar Dev. Partners, LLC, 22 AD3d 1017, 1021-1022 [2005]).
Lahtinen, J.P., Malone Jr., Kavanagh and McCarthy, JJ., concur. Ordered that the order is affirmed, with costs.

. Additional contractors and subcontractors were originally named as defendants in plaintiffs’ complaint. This Court previously affirmed the dismissal of the complaint as to certain of those entities Wolfe v KLR Mech., Inc., 35 *1629 AD3d 916, 918-920 [2006]), and apparently only Irving now remains as a defendant.

. No dispute exists that Irving’s settlement with plaintiffs automatically extinguished Irving’s third-party contribution claims against North Country and Rust (see General Obligations Law § 15-108), but that Irving’s indemnification claims remain pending.