■ GREGORY S. MILLS, Respondent-Appellant, v ROBERT J. CHAUVIN, Appellant-Respondent. [962 NYS2d 412]—

Per Curiam. Appeals (1) from an order of the Supreme Court (Hoye, J.), entered May 17, 2011 in Saratoga County, which, among other things, partially granted plaintiff's cross motion

for summary judgment, (2) from the judgment entered thereon, and (3) cross appeals from a judgment of said court, entered December 6, 2011 in Saratoga County, upon a decision of the court partially in favor of plaintiff.

Plaintiff, Gregory Mills, and defendant, Robert Chauvin, are two experienced attorneys who shared both a friendship and a professional/business relationship. Those longstanding relationships deteriorated and gave rise to this action involving three distinct matters—the sale of a parcel of real property in the Town of Clifton Park, Saratoga County (hereinafter the Crescent Road property), a fee-sharing agreement in a personal injury case (hereinafter the contingency fee) and an investment in a real estate development project in Virginia (hereinafter the Amelia Village project).

### The Crescent Road Property

In 1998, the parties formed a partnership and took ownership of a commercial office building located on Crescent Road in the Town of Clifton Park, Saratoga County.[1] Mills leased office space in the building for his law practice and paid rent and expenses pursuant to such lease. In March 2008, after Chauvin decided, for a variety of reasons, that he no longer wished to maintain his ownership of the Crescent Road property, the parties agreed that Mills would purchase Chauvin's one-half interest in such property and they executed a purchase and sale agreement establishing a purchase price of $261,176.67 and a closing date of April 15, 2008. The closing was delayed and, in a July 2, 2008 correspondence to Mills, Chauvin declared that time was of the essence and that the closing had to occur on or before July 15, 2008. Mills was unable to make financial arrangements to purchase the property by that date and Chauvin ultimately declared Mills to be in breach of the parties' agreement and, as a result, that such agreement was null and void.

### The Contingency Fee

In connection with his law practice, Chauvin was retained by an injured party to represent him in a personal injury action. After Chauvin succeeded in establishing the defendants' liability in such action, he and Mills agreed that Mills would act as the attorney in the damages phase of the action. Mills thereafter tried the case to a verdict and, ultimately, a settlement was

---

1. Although Chauvin initially purchased the property himself, he later executed a deed that reflected that both parties had an equal interest therein through the partnership.

procured in excess of $2 million, from which Chauvin was entitled to a contingency fee. Mills and Chauvin did not have a written agreement with respect to how the contingency fee would be allocated between them and a dispute arose with regard thereto.

### The Amelia Village Project

Chauvin was an investor in the Amelia Village project. Over a course of time, Mills made multiple monetary payments to Chauvin—totaling $395,750—which Chauvin claims were investments in the project and Mills claims were loans. Ultimately, Mills requested that Chauvin return the payments he had advanced. In connection therewith, Chauvin executed a promissory note in April 2008 that obligated him to pay Mills $395,750. However, Chauvin later challenged the validity of the promissory note and claimed that Mills was not entitled to a return of his investments.

With the foregoing as background, we now turn to the litigation that followed. Based upon Chauvin's refusal to close on the sale of the Crescent Road property, Mills commenced this action for specific performance of the parties' purchase and sale agreement. Chauvin filed an answer to the complaint with various counterclaims, including a claim based on Mills' alleged breach of an agreement between the parties with respect to the Amelia Village project. Chauvin also sought a determination that the purchase and sale agreement relating to the Crescent Road property was null and void due to Mills' failure to tender performance on the closing date established by Chauvin in his time of the essence demand, and requested that he be granted the equitable remedy of a partition of that property. Finally, Chauvin sought an accounting of their partnership and, more specifically, an examination of the rents collected and expenses paid in connection with the Crescent Road property.

Mills subsequently filed an amended complaint adding three causes of action—the first for recovery of a one-third share of the contingency fee that Chauvin collected in connection with the personal injury action, and the second and third to recover the payments Mills had made with respect to the Amelia Village project, based upon claims of breach of contract and unjust enrichment, respectively. In response, Chauvin added a counterclaim seeking a declaration that Mills' share of the contingency fee should be determined based upon quantum meruit.

After substantial discovery, Chauvin moved for an order pursuant to Judiciary Law § 474 declaring that Mills' portion of the contingency fee should be determined on a quantum meruit

basis. Mills cross-moved for summary judgment on his claims for specific performance of the parties' agreement for the sale of the Crescent Road property, for recovery of his one-third share of the contingency fee and for enforcement of the Amelia Village project promissory note. In an order entered May 17, 2011, Supreme Court denied Chauvin's motion and partially granted Mills' cross motion to the extent that it granted summary judgment to Mills on his claims for specific performance of the Crescent Road agreement and for one third of the contingency fee. Chauvin appeals from that order and from the judgment entered thereupon.

The action proceeded to a nonjury trial with respect to the parties' remaining claims and counterclaims. At the conclusion thereof, Supreme Court found that Chauvin had not met his burden of proof on his counterclaims, that the promissory note was valid and enforceable and that Mills was entitled to recover pursuant to its terms. Chauvin now appeals from the judgment entered upon that decision.[2] For the reasons that follow, we affirm Supreme Court's order and judgments in their entirety.

We turn first to Supreme Court's order granting Mills' cross motion for summary judgment on his claim for specific performance with respect to his purchase of the Crescent Road property. As the movant, Mills had the burden of establishing, as a matter of law, that he was ready, willing and able to perform under the parties' purchase and sale agreement and that Chauvin was unwilling to convey the property (*see Huntington Min. Holdings v Cottontail Plaza*, 60 NY2d 997, 998 [1983]; *Nehmadi v Davis*, 95 AD3d 1181, 1185 [2012]; *Bayly v Broomfield*, 93 AD3d 909, 911 [2012]). It is well established that, where a contract for the sale of real property does not specify that time is of the essence, "the seller may unilaterally convert the contract into one making time of the essence by giving the buyer 'clear, unequivocal notice' and a reasonable time to perform" (*Highbridge Dev. BR, LLC v Diamond Dev., LLC*, 67 AD3d 1112, 1114 [2009], quoting *ADC Orange, Inc. v Coyote Acres, Inc.*, 7 NY3d 484, 490 [2006]; *see Whitney v Perry*, 208 AD2d 1025, 1026 [1994]). " 'What constitutes a reasonable time for performance depends upon the facts and circumstances of the particular case' " (*Malley v Malley*, 52 AD3d 988, 990 [2008], quoting *Ben Zev v Merman*, 73 NY2d 781, 783 [1988]), but the relevant factors include, among others, "the presence or absence

---

**2.** Although Mills also cross-appealed from that judgment, he has abandoned such cross appeal by failing to address it in his brief (*see Matter of Amedore v Peterson*, 102 AD3d 995, 996 n 2 [2013], *lv denied* 20 NY3d 1006 [2013]).

of good faith, the experience of the parties and the possibility of prejudice or hardship to either one, as well as the specific number of days provided for performance" (*Ben Zev v Merman*, 73 NY2d at 783). Although the question of reasonableness is generally one of fact (*see Bossert v Fratalone*, 28 AD3d 852, 853 [2006]), "where the facts are undisputed, what is a reasonable time becomes a question of law, and the case is appropriate for summary judgment" (*Hegeman v Bedford*, 5 AD3d 632, 632 [2004]; *see Spagna v Licht*, 87 AD2d 626, 627 [1982]).

In support of his cross motion, Mills submitted, among other things, a copy of the parties' March 2008 real estate contract, the parties' deposition testimony, his own affidavit and various items of correspondence. The real estate contract indicated that the closing would be "on or before April 15, 2008," but did not include any language indicating that time was of the essence. However, in a July 2, 2008 correspondence, Chauvin declared time to be of the essence and stated that a closing would have to occur "on or before July 15, 2008." Mills acknowledged receipt of Chauvin's letter by email on July 8,[3] and indicated that he would be unable to refinance the mortgage by that date, but would attempt to secure financing to complete the sale by then. In various communications between July 9 and July 15, the parties continued to argue about other terms of the sale and aspects of their partnership. On July 15, Mills sent a fax to Chauvin, informing him that there was an unexpected delay in obtaining the funds for payment, but assured him that the funds would be available on July 18. On July 17, Chauvin sent a fax in which he declared Mills to be in breach of contract and that the agreement was null and void. Mills responded by fax the same day that he would be ready to perform on July 18.

In his affidavit, Mills alleged that he was ready, willing and able to perform his contractual obligations on July 18, 2008, but that Chauvin unreasonably and inexplicably refused to complete the transaction. Mills explained that, when Chauvin suddenly demanded that the parties close in July 2008, he was not able to secure financing through a lending institution to complete the purchase in the short period of time provided, but was willing to use his personal funds to do so and notified Chauvin of his intention to proceed in such a manner. Mills submitted a copy of a cashier's check made payable to Chauvin dated July 18, 2008. He alleged that he appeared at Chauvin's office with such check on July 18 and was prepared to close, but Chauvin refused. Based on this evidence, Mills made a prima facie show-

---

**3.** According to Mills, because of the July 4th holiday, he did not receive Chauvin's communication until July 8.

ing of his entitlement to summary judgment, shifting the burden to Chauvin to produce evidentiary proof in admissible form sufficient to raise a material issue of fact (*see Fallati v Mackey*, 31 AD3d 879, 880 [2006], *lv denied* 7 NY3d 711 [2006]).

In opposition, Chauvin submitted, among other things, a fax dated July 11, 2008, which informed Mills of the time at which the closing was to take place and another from July 15, notifying Mills that he was not willing to extend the closing date. In his affidavit, he averred that Mills was not ready, willing and able to close on July 15 and, further, that even if he had agreed to extend the closing date to July 18, Mills was still not ready, willing and able to perform his obligations as he had not refinanced the mortgage on the property in order to relieve Chauvin of liability thereon.

Supreme Court found that Chauvin's July 2, 2008 correspondence declaring that time was of the essence did not include a specific closing date, as required (*see ADC Orange, Inc. v Coyote Acres, Inc.*, 7 NY3d at 490), and concluded that Chauvin's July 11 communication specifying the July 15 closing date did not provide a reasonable amount of time for Mills to make the necessary financial arrangements in order to close. Considering the relevant factors—particularly, the lack of any clear explanation by Chauvin for his abrupt declaration that time was of the essence after the parties had been cooperatively working toward a closing date for several months, the prejudice to Mills as a result of the limited amount of notice given to him, and the lack of any record evidence regarding what harm would come to Chauvin if Mills did not close by July 15—the undisputed competent evidence before Supreme Court supports its conclusion that the notice provided by Chauvin was unreasonable as a matter of law (*see Malley v Malley*, 52 AD3d at 990; *Weintraub v Stankovic*, 43 AD3d 543, 544 [2007]; *compare 2626 Bway LLC v Broadway Metro Assoc., LP*, 85 AD3d 456, 457 [2011]).

We also reject Chauvin's argument that Mills was not ready, willing and able to perform on July 18, 2008 because he had not obtained financing to remove Chauvin's name from the mortgage. We need only note that the purchase and sale agreement—which was drafted by Chauvin, an experienced real estate attorney—did not include any requirement that Mills do so at the time of closing. Accordingly, even viewing the evidence in a light most favorable to Chauvin, as the nonmoving party (*see Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]; *U.W. Marx, Inc. v Koko Contr., Inc.*, 97 AD3d 893, 894 [2012]), he failed to demonstrate the existence of triable issues of fact, and Supreme Court properly granted Mills' cross motion for summary judgment on his claim for specific performance.

We next address Mills' cross motion for summary judgment on his claim regarding the contingency fee. As the movant, Mills bore the initial burden of demonstrating the existence of an enforceable contract (*see generally Alvarez v Prospect Hosp.*, 68 NY2d at 324) which, in turn, requires that there be "an objective meeting of the minds," and "a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms" (*Matter of Express Indus. & Term. Corp. v New York State Dept. of Transp.*, 93 NY2d 584, 589 [1999]; *accord Robison v Sweeney*, 301 AD2d 815, 817 [2003]). When a written instrument is unambiguous, the question of the parties' intent may be determined as a matter of law (*see Wolfe v Irving Tissue, Inc.*, 95 AD3d 1628, 1630 [2012]; *Brighton Inv., Ltd. v Har-Zvi*, 88 AD3d 1220, 1222-1223 [2011]).

Here, in support of his cross motion, Mills submitted, among other things, his affidavit and deposition testimony, as well as supporting documentation, including copies of communications between the parties. Mills avers that, when he first became involved in the personal injury action, the parties agreed that he would be entitled to one third of the contingency fee that Chauvin would receive. Mills further alleged that, on March 12, 2008, the parties met to discuss a possible resolution of the outstanding issues with respect to the Crescent Road property, the Amelia Village project and the contingency fee. Mills then sent Chauvin an email to memorialize the agreements they had reached at that meeting. In the email, Mills wrote, as pertinent here, that "we agreed that [Mills] would be entitled to [one third] of [the contingency] fee . . . whenever it is received." Mills also submitted Chauvin's email response dated March 17, 2008, confirming that such statement was accurate. In our view, the foregoing was sufficient to satisfy Mills' prima facie burden of demonstrating his entitlement to summary judgment on this claim and to shift the burden to Chauvin to establish the existence of material issues of fact.

In response, Chauvin points to the remainder of his March 17, 2008 correspondence—in which he stated, among other things, that "[e]verything on your annexed March 12, 2008 e-mail is correct and acceptable with the exception of the reference *in Amelia* to the payment from [the Crescent Road property and the personal injury action]" (emphasis added)—and claims that he had only agreed to the one-third fee as part of a global settlement offer, contingent upon resolution of the issues surrounding the Crescent Road property and the Amelia Village project. In our view, it is obvious from the plain language of his

response that Chauvin was only correcting the reference in Mills' letter to the manner in which Chauvin would reimburse Mills for the money he had advanced for the Amelia Village project. Based upon our review of the record, we conclude that the communications between the parties on March 12 and March 17 were " 'sufficiently clear and concrete' to establish [the parties'] intent" to reach an enforceable agreement (*Brighton Inv., Ltd. v Har-Zvi*, 88 AD3d at 1222, quoting *Williamson v Delsener*, 59 AD3d 291, 291 [2009]; *see Capital Dist. Enters., LLC v Windsor Dev. of Albany, Inc.*, 79 AD3d 1424, 1426 [2010])—and, in fact, unambiguously established a meeting of the minds (*see Newmark & Co. Real Estate Inc. v 2615 E. 17 St. Realty LLC*, 80 AD3d 476, 477-478 [2011]) that Chauvin would pay Mills one third of the contingency fee—independent of their resolution of the other matters.

Chauvin also asserts that, even if the parties did reach an agreement that Mills would receive one third of the contingency fee, such an agreement would violate the former Code of Professional Responsibility, which governed the parties' sharing of this fee.[4] However, it is undisputed that the client in the personal injury action agreed that Mills would be involved in such action and was informed that Mills' involvement would not affect the client's ultimate recovery. It is also undisputed that Mills "actually contributed to the legal work" in the personal injury action (*see Benjamin v Koeppel*, 85 NY2d 549, 556 [1995]; *compare Hirsch v Bashian & Farber, LLP*, 79 AD3d 971, 971 [2010]). As to how Mills' contribution to the client's representation should be quantified, the Court of Appeals has held that, "[i]n the realm of fee-sharing disputes, 'courts will not inquire into the precise worth of the services performed by the parties' " (*Samuel v Druckman & Sinel, LLP*, 12 NY3d 205, 210 [2009], quoting *Benjamin v Koeppel*, 85 NY2d at 556). Moreover, it would be unjust to allow Chauvin to use the rules governing attorney conduct against Mills to argue that their "fee-sharing agreement and the obligations thereunder must be

---

**4.** As applicable here, the former Code of Professional Responsibility provided that a lawyer could not divide a legal fee with another lawyer who was not a member of his or her law office, unless: "(1) The client consent[ed] to employment of the other lawyer after a full disclosure that a division of fees [would] be made. (2) The division [was] in proportion to the services performed by each lawyer or, by a writing given the client, each lawyer assume[d] joint responsibility for the representation. (3) The total fee of the lawyers [did] not exceed reasonable compensation for all legal services they rendered the client" (former Code of Professional Responsibility DR 2-107 [a] [22 NYCRR former 1200.12 (a)]; *see generally* Rules of Professional Conduct [22 NYCRR 1200.0] rule 1.5 [g]).

voided on ethical grounds, when [Chauvin] freely agreed to be bound by and received the benefit of the same agreement, particularly where, as here, there is no indication that the client was in any way deceived or misled" (*Samuel v Druckman & Sinel, LLP*, 12 NY3d at 210). As a result, we find no public policy reason or other basis to invalidate the parties' fee-sharing agreement and determine Mills's fees based on quantum meruit. Accordingly, Supreme Court properly granted summary judgment to Mills on his contingency fee claim.

We now turn to the issues resolved by Supreme Court after trial. Initially, we reject Chauvin's claim that Supreme Court erred in concluding that the April 2008 promissory note was enforceable. Chauvin does not dispute that Mills had previously paid him $395,750 in connection with the Amelia Village project, that he signed the promissory note promising to repay that amount to Mills, or that he tendered the note to Mills for the purpose of providing documentation to Mills' lending institution in support of Mills' application for financing of the purchase of the Crescent Road property. Instead, Chauvin claims that the promissory note was not enforceable because it was not given to secure a debt and, therefore, lacked consideration (*see* UCC 3-306 [c]).

In this regard, Mills testified that, when the parties met on March 12, 2008 to discuss the issues between them, they agreed that Chauvin would repay Mills all of the money that Mills had contributed to the Amelia Village project and that the promissory note confirmed their agreement.[5] On the other hand, Chauvin claims that the payments that Mills made to the Amelia Village project were investments that could not be returned when Mills withdrew from that project, and that the promissory note was not intended to be a promise of repayment, but was drafted in an attempt to reach a global settlement of all the disputes between the parties existing at that time.

The record amply supports Supreme Court's finding that the consideration for the promissory note was the $395,750 that Mills had provided to Chauvin in connection with the Amelia Village project and that the promissory note represented security for Chauvin's antecedent obligation to repay such funds (*see* UCC 3-303 [b]). The note itself—which was drafted by Chauvin, signed by him, notarized and transmitted to Mills (*see* UCC 3-104)—clearly states that it was executed in return for a loan received by Chauvin and "contain[ed] an unconditional

---

5. Mills' March 12, 2008 email to Chauvin regarding the parties' meeting also referred to their agreement that Mills would be repaid for "the $395,750 that [Mills had] advanced to date."

promise or order to pay a sum certain in money" (UCC 3-104 [1] [b]). In addition, Mills took the note as a holder in due course (*see* UCC 3-302 [1]). Based upon our independent evaluation of the evidence and, "giving due deference to the trial court's credibility determinations concerning witnesses" (*Fabi v Hayes*, 97 AD3d 1049, 1050 [2012], *lv denied* 20 NY3d 855 [2013]), we conclude that Supreme Court's determination that Chauvin failed to establish a bona fide defense of lack of consideration is supported by the record (*see Friends Lbr. v Cornell Dev. Corp.*, 243 AD2d 886, 887 [1997]; *see generally Green Apple Mgt. Corp. v Aronis*, 95 AD3d 826, 827 [2012]; *compare American Realty Corp. of NY v Sukhu*, 90 AD3d 792, 793 [2011]).

Supreme Court's dismissal of Chauvin's counterclaims does not require extended discussion. As to the Crescent Road property, Chauvin alleged that Mills had failed to collect rent and other obligations from the tenants and sought an accounting. However, there was no written partnership agreement that allowed the partners to call for an accounting (*see* Partnership Law § 44 [2]), and the record does not establish that Mills breached his fiduciary duty to Chauvin with respect to the partnership (*see Goldman v Rio*, 62 AD3d 834, 835 [2009]; *Adam v Cutner & Rathkopf*, 238 AD2d 234, 242 [1997]) or that other circumstances existed that warranted an accounting (*see* Partnership Law § 44). As Supreme Court found, the evidence at trial established that Chauvin was active in the partnership and its financial affairs, and there was no evidence to suggest that Chauvin was excluded by Mills therefrom. As a result, we agree that Chauvin failed to demonstrate his entitlement to a formal accounting (*see* Partnership Law §§ 43-44).

Nor do we discern any reason to disturb Supreme Court's determination that Mills had no obligation to pay additional rent for the extra space his law office leased at the Crescent Road property. There was no written agreement reflecting any such obligation. To the contrary, the evidence demonstrated that the purpose of the partnership was to produce a tax deduction and not to generate any taxable income, and that the amount of rent paid by Mills was consistent with such purpose. Further, we defer to Supreme Court's credibility determinations in rejecting Chauvin's testimony that the parties had an oral agreement for the payment of additional rent by Mills, particularly in view of the fact that Mills had occupied the extra space in the office building for many years without making any such payment.

Finally, the record supports Supreme Court's finding that Chauvin agreed to Mills' withdrawal from the Amelia Village project and, therefore, Chauvin's related counterclaim was

properly dismissed. To the extent not specifically addressed herein, Chauvin's remaining claims have been reviewed and found to be without merit.

Rose, J.P., Spain, Stein and McCarthy, JJ., concur. Ordered that the order and judgments are affirmed, with costs to plaintiff.