Prendergast v Swiencicky (2020 NY Slip Op 02686)





Prendergast v Swiencicky


2020 NY Slip Op 02686


Decided on May 7, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 7, 2020

527275

[*1]Elizabeth Prendergast, Respondent,
v
Maria Swiencicky, Appellant, et al., Defendant.

Calendar Date: February 13, 2020

Before: Garry, P.J., Lynch, Mulvey, Aarons and Reynolds Fitzgerald, JJ.


David N. Goldin, Albany, for appellant.
Whiteman Osterman & Hanna LLP, Albany (Tara MacNeill of counsel), for respondent.
Roemer Wallens Gold & Mineaux LLP, Albany (Robert J. Heffernan of counsel), for David W. Feldman and another.



Lynch, J.
Decided and Entered: May 7, 2020 527275
ELIZABETH PRENDERGAST,
Respondent,
v
MEMORANDUM AND ORDER
MARIA SWIENCICKY,
Appellant,
et al.,
Defendant.
Calendar Date: February 13, 2020
Before: Garry, P.J., Lynch, Mulvey, Aarons and Reynolds
Fitzgerald, JJ.
David N. Goldin, Albany, for appellant.
Whiteman Osterman & Hanna LLP, Albany (Tara MacNeill of counsel), for respondent.
Roemer Wallens Gold & Mineaux LLP, Albany (Robert J. Heffernan of counsel), for David W. Feldman and another.
Lynch, J.
(1) Appeals (a) from an order of the Supreme Court (Buchanan, J.), entered October 31, 2017 in Schenectady County, which, among other things, denied defendant Maria Swiencicky's motion to dismiss the complaint, (b) from an order of said court, entered October 15, 2018 in Schenectady County, which, among other things, granted plaintiff's motion for partial summary judgment, and (c) from the judgment entered thereon, and (2) motion to, among other things, strike certain briefs.
Plaintiff and defendant Maria Swiencicky (hereinafter defendant) entered into a standard form real estate contract to sell plaintiff's house to defendant "as is," along with, among other things, a dining room set, for $395,000. Per the contract, defendant tendered a $4,000 deposit that was held in escrow by defendant Realty USA WNY, Inc. The contract included a contingency that permitted a structural inspection. Notification of any substantial defects that would individually cost in excess of $1,500 to repair would trigger the cancellation of the contract, but the provision allowed defendant the option of a 10-day deferral in cancellation "to provide the parties an opportunity to otherwise agree in writing." On February 24, 2017, defendant provided notice of substantial defects that would allow cancellation, but defendant elected to defer the cancellation of the contract by 10 days. A few days later, plaintiff provided written notice that she was unwilling to make any repairs or offer any concessions for the items found in the structural inspection, but was willing to proceed "as is." Plaintiff and defendant (hereinafter collectively referred to as the parties) then proceeded to a scheduled closing on May 25, 2017, where plaintiff's attorney presented payoff letters for the two mortgages on the house, one of which was a home equity line of credit (hereinafter HELOC). Defendant appeared at the closing with several checks, including checks made out to the mortgagees for the payoff amounts, but refused to tender the checks or close on the property.
Plaintiff commenced this action alleging, among other things, breach of contract. In October 2017, Supreme Court denied defendant's motion to dismiss the complaint and canceled defendant's notice of pendency. Defendant thereafter filed an amended answer raising affirmative defenses and a counterclaim for RPAPL 1517 relief declaring that she has a contract interest in the subject property. Plaintiff moved for, among other things, summary judgment on her breach of contract cause of action. Realty USA cross-moved for, among other things, dismissal of defendant's cross claims. Defendant cross-moved for summary judgment. In October 2018, the court granted plaintiff summary judgment on her breach of contract claim, dismissed defendant's counterclaim and issued a judgment in plaintiff's favor in the amount of $42,861.41, with Realty USA ordered to turn over the $4,000 deposit to plaintiff. Defendant appeals from the October 2017 order, the October 2018 order and the subsequent judgment.[FN1]
Supreme Court properly granted plaintiff summary judgment on her breach of contract claim. To establish her claim for breach of contract, plaintiff was required to prove that a contract existed, that plaintiff performed her obligations under the contract, that defendant breached the contract and that plaintiff suffered damages as a result (see Galusha & Sons, LLC v Champlain Stone, Ltd., 130 AD3d 1348, 1349 [2015]). The parties acknowledge that they entered into a standard form real estate contract. Despite defendant having notified plaintiff that an inspection revealed structural defects that would permit defendant to cancel the contract, she exercised her contractual right to defer such cancellation for 10 days. During that period, plaintiff advised that she was not willing to make any repairs or concessions, but was willing to proceed with the sale "as is"; defendant avers that on the tenth day she withdrew her option to cancel the contract and plaintiff agreed to proceed "without an agreement to modify the . . . contract." The parties thereafter continued to proceed under the contract. Thus, the parties agreed to be bound by the original contract and — notwithstanding defendant's assertions to the contrary — defendant waived her right to demand concessions related to any of the defects revealed by the prior inspections (compare Wilderhomes, LLC v Zautner, 34 AD3d 1062, 1063-1064 [2006]).
"[W]hen a party to a real estate contract declares time to be of the essence in setting a closing date, each party must tender performance on that date, and a failure to perform constitutes a default" (Donerail Corp. N.V. v 405 Park LLC, 100 AD3d 131, 137 [2012]; see Grace v Nappa, 46 NY2d 560, 565-566 [1979]). "Thus, where a seller seeks to hold a purchaser in breach of contract, the seller must establish that [he or she] was ready, willing, and able to perform on the time-of-the-essence closing date, and that the purchaser failed to demonstrate a lawful excuse for its failure to close" (Donerail Corp. N.V. v 405 Park LLC, 100 AD3d at 137 [citations omitted]). Defendant argues that plaintiff did not have a marketable title at closing, as she could only provide a marketable title, as required under the contract, by providing a satisfaction of each mortgage lien at closing. However, this position would necessarily have required plaintiff to pay off each mortgage in advance and secure each satisfaction, and, in our view, is inconsistent with both the contract and the conduct of the parties.
It is significant that the parties used a "Standard Form Contract for Purchase and Sale of Real Estate" produced by the Capital Region Multiple Listing Service, Inc. (see Laba v Carey, 29 NY2d 302, 309 [1971]). Use of this standard form reflects the parties' intent to embrace the common practice developed over the years in the real estate closing realm (see id.). This common practice with respect to the existing mortgage liens is as follows — the seller obtains payoff letters from respective lenders, the purchaser brings corresponding bank checks to the closing payable to each lender, and either the title insurance agent or the seller's counsel processes those payments to secure the required mortgage satisfaction (see Addesso v Shemtob, 122 AD2d 754, 755 [1986], affd 70 NY2d 689 [1987]). Within 30 days of receipt of payment, the lenders are statutorily mandated to have a mortgage satisfaction "presented for recording to the recording officer of the county where the mortgage is recorded" (RPAPL 1921 [1] [a]). This protocol is consistent with the reality that the pertinent closing documents — the deed and the mortgage satisfactions — are recorded after the closing (see Real Property Law § 291).
Here, the property was encumbered by two mortgages — a traditional mortgage held by JP Morgan Chase Bank N.A. (hereinafter Chase) and a HELOC issued by KeyBank. Chase provided a payoff letter showing a balance due through May 24, 2017, with a per diem rate pending receipt of payment. Similarly, KeyBank provided a payoff letter dated May 12, 2017 specifying the amount due with a per diem rate. Significantly, the KeyBank letter specifies in bold, underlined type as follows: "Please be advised that this account has been blocked from further advance" (compare Trustco Bank v DiNova, 104 AD3d 1117, 118-119 [2013]). The record shows that plaintiff's counsel provided defendant with copies of each letter on May 13, 2017, with a calculation of the total amount due through May 30, 2017. The KeyBank letter also included a line for plaintiff to sign (which she did on May 15, 2017) stating, "I request KeyBank close my [HELOC] account, and release its security interest in my property." Plaintiff's counsel further provided defendant with prepared transmittal letters to overnight send checks to Chase and KeyBank, respectively, following the closing — a schedule that would assure that each lender received payment in full, together with the required recording fee, prior to May 30, 2017.
Under paragraph 9 of the contract, plaintiff was required to provide defendant with an updated 40-year abstract of title. The decision whether to obtain a fee title insurance policy was up to defendant. The record shows that plaintiff had the title abstract updated by Gifford Abstract Corp. The record also includes an email from Tom Gifford, a title insurer underwriter, to defendant advising that he could "personally attend a closing . . . if you invite me." Gifford explained "that at the closing we mark up the title report and redate it for the time of the closing. This serves as a temporary policy and shows the disposition of all the items. At this point the mortgages will be omitted and you will be protected by the title insurance from the lien of those mortgages." Gifford further explained that he would take steps to issue a final policy within a week of the closing. As for the mortgage liens, Gifford advised that "[a]t [the] closing we are prepared to accept [Chase's and KeyBank's] payoff letters and send checks to the . . . lenders by express mail that night . . . or the next day."
The closing took place on May 25, 2017, at the offices of the real estate broker. As it turns out, defendant declined to obtain title insurance and Gifford did not attend. Plaintiff's counsel did attend and was prepared to process the mortgage payoffs. Significantly, defendant arrived with bank checks payable to KeyBank and Chase in the precise amounts due through May 30, 2017, as specified in the payoff letters. Nonetheless, defendant declined to close unless plaintiff agreed to further escrow funds in the amount of the two mortgages and reduce the purchase price by $30,000. Notably, defendant came to the closing with only enough funds to pay the amount due if plaintiff agreed to provide the $30,000 credit. Plaintiff declined to do so, and the closing fell through.
The foregoing shows that plaintiff provided the payoff documentation needed to pay the outstanding mortgages — and that defendant actually brought the appropriate bank checks to the closing. Defendant had received advance, written confirmation that KeyBank had blocked further distributions from the HELOC. Plaintiff's counsel confirmed that he would forward payment directly to each lender, securing defendant's right to a discharge of the mortgage lien and plaintiff's right to be released from the underlying mortgage debts. Upon receipt of the payment, each lender was statutorily bound to have a mortgage satisfaction timely recorded. It bears emphasis that this transaction did not involve a private mortgagee, in which case alternative measures for obtaining a mortgage satisfaction could reasonably have been required in the contract (compare Goldstein v Gold, 106 AD2d 100, 103-104 [1984], affd 66 NY2d 624 [1985]; 2 Warren's Weed, New York Real Property § 25.09 [2020]). Moreover, defendant received written assurances from Gifford Abstract that a temporary title insurance policy would be provided at the closing, with a final policy to be issued within a week, even before the recorded mortgage satisfactions were returned by the County Clerk's office. Although a better practice is for a purchaser to procure title insurance (see 2 Warren's Weed, New York Real Property § 25.09 [2020]), defendant's decision not to obtain title insurance was certainly her decision to make. The concluding point is that defendant had documented assurance that the marketable title was being provided. Under these circumstances, we find that plaintiff duly performed under the contract. Defendant's refusal to complete the transaction constituted a breach of contract. As such, Supreme Court properly granted plaintiff's motion for summary judgment.
As for damages, plaintiff submitted an affidavit stating that she paid at least $5,437.11 in mortgage interest and $7,028.08 in real estate taxes incurred between May 25, 2017 and the December 21, 2017 closing date with the subsequent purchasers. Plaintiff also explained that she vacated the subject premises prior to the parties' May 25, 2017 closing date — which, of course, was necessary to provide full possession to defendant upon closing. Correspondingly, plaintiff entered into a binding lease agreement for an apartment and had to dispose of most of her furnishings. Supreme Court awarded plaintiff damages in the amount of $37,937.11, representing the difference between the parties' contract price ($395,000) and the contract price of plaintiff and the subsequent purchasers ($368,000 less $5,500 in seller concessions), plus the mortgage interest of $5,437.11 (see 12 Baker Hill Rd., Inc. v Miranti, 130 AD3d 1425, 1427 [2015]).[FN2] On balance, we decline to reduce the award.
Finally, we have reviewed defendant's motion seeking, among other things, sanctions, to strike the briefs filed by plaintiff and by the subsequent purchasers and to supplement the record, and have determined that the requested relief is either unnecessary or unwarranted.[FN3] Defendant's remaining contentions, to the extent that they are not specifically addressed here, have been examined and are without merit.
Garry, P.J., Aarons and Reynolds Fitzgerald, JJ., concur.
Mulvey, J. (concurring in part and dissenting in part).
I agree with the majority that the appeal from the October 2017 order must be dismissed, that the motion by defendant Maria Swiencicky (hereinafter defendant) should be denied and that defendant waived her right to demand concessions related to any defects revealed by inspections prior to her February 24, 2017 notice to plaintiff. However, I disagree with the majority's conclusion that Supreme Court properly granted plaintiff summary judgment on her breach of contract claim. I dissent to the extent that I believe that such motion should have been denied, the complaint should have been dismissed and defendant's counterclaim should not have been dismissed
To establish her claim for breach of contract, plaintiff was required to prove that a contract existed, that plaintiff performed her obligations under the contract, that defendant breached the contract and that plaintiff suffered damages as a result (see Galusha & Sons, LLC v Champlain Stone, Ltd., 130 AD3d 1348, 1349 [2015]). As to the first element, it is undisputed that plaintiff and defendant (hereinafter collectively referred to as the parties) entered into a standard form real estate contract. As to the second element, and as noted by the majority, "where a seller seeks to hold a purchaser in breach of contract, the seller must establish that [he or she] was ready, willing, and able to perform on the time-of-the-essence closing date, and that the purchaser failed to demonstrate a lawful excuse for its failure to close" (Donerail Corp. N.V. v 405 Park LLC, 100 AD3d 131, 137 [2012]). Thus, we must determine whether plaintiff failed to perform her obligation under the contract to deliver at the closing a deed with title free from liens, or whether plaintiff was ready to deliver such title and defendant breached the contract by failing to accept the title and close.
Defendant argues that title to the property would have been marketable and consistent with the contract only if no recorded liens existed at the moment that the parties walked into the closing. Defendant — who filed her brief pro se and did not always clearly or concisely articulate her arguments — asserts that paragraph 10 of the contract required plaintiff to deliver "marketable" title. That paragraph states that the property will be delivered subject to, among other things, covenants, restrictions and easements of record, "provided that nothing in this paragraph renders the title to the property unmarketable." Because mortgage liens are not mentioned in paragraph 10, that paragraph and its reference to marketability of title are not applicable here. Although the majority, apparently misled by defendant's misstatement, also focuses on whether plaintiff was prepared to deliver "marketable" title, the contract does not explicitly state such a requirement. Instead, the applicable contract language appears in paragraph 11, addressing the type of deed required to transfer the property, as discussed below.
Plaintiff relies on the common practice in the real estate industry wherein the seller uses some or all of the proceeds of the sale to pay off any outstanding mortgages and clear the mortgage liens. As correctly explained by the majority, under that practice counsel obtains a payoff letter from each lender before the closing, obtains bank checks at the closing to cover the outstanding debts, and either the seller's attorney or a title agent delivers the checks to the lenders with a request that a satisfaction of mortgage be executed and recorded. Defendant asserts that this process places on the buyer the risk that the lender will fail to record a satisfaction, leaving a lien on the property, which does not provide defendant with the assurances that she bargained for in the contract.
Paragraph 11 of the parties' contract required plaintiff to transfer the property "by means of a [w]arranty [d]eed, with [l]ien [c]ovenant." "[A] written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms, . . . [and] if the agreement on its face is reasonably susceptible of only one meaning, a court is not free to alter the contract to reflect its personal notions of fairness and equity" (Greenfield v Philles Records, 98 NY2d 562, 569-570 [2002]). The Legislature has provided statutory definitions for certain types of deed covenants "or similar covenants" (Real Property Law § 253). A covenant that "premises are free from encumbrances" means that the title to the property is "free, clear, [and] discharged" from, among other things, all liens of any kind (Real Property Law § 253 [3] [internal quotation marks omitted]). This covenant is similar to, or another name for, a lien covenant. A breach of the covenant against encumbrances occurs, "if at all, upon delivery of the deed" (Geiszler v DeGraaf, 166 NY 339, 342 [1901]; see Huyck v Andrews, 113 NY 81, 85 [1889]). Accordingly, it appears that the common practice of paying an outstanding mortgage out of the proceeds of the sale while delivering the deed at closing would result in a breach of a lien covenant from the outset, as the mortgage lien would still be on record at the time that the deed is delivered. Although that breach would presumably be cured within a short time — when the lender receives the payoff check and records a satisfaction of mortgage — the covenant is breached at the time of closing. Hence, in these circumstances, the seller cannot properly deliver at closing an unbreached warranty deed with lien covenant.
Some courts have held that a seller who is required by contract to deliver marketable title at closing may do so by "pay[ing] the mortgage out of the proceeds of the purchase price" (Addesso v Shemtob, 122 AD2d 754, 755 [1986], affd 70 NY2d 689 [1987]).[FN4] On the other hand, when a mortgage has not been satisfied or the satisfaction has not been recorded prior to a closing, there are certain "standard practices" that a party or title insurance company may follow to ensure unencumbered title, including holding "the mortgage money in escrow[,] or delay[ing] the closing until the satisfaction had been recorded[,] or requir[ing] the mortgagee to appear at the closing" to personally deliver the satisfaction of mortgage upon payment (Goldstein v Gold, 106 AD2d 100, 103 [1984], affd 66 NY2d 624 [1985]; see 2 Warren's Weed, New York Real Property § 25.08 [2] [2020]). Indeed, a respected treatise advises that if a mortgage is outstanding, "[t]he prudent practitioner should insist upon delivery of a proper satisfaction, release or discharge in recordable form prior to acceptance of title," or procurement of title insurance against the lien (2 Warren's Weed, New York Real Property § 25.09 [2020]).[FN5] Such cautionary practices are suggested because, if the seller intends to satisfy an encumbrance out of the purchase price, "[t]his may result in loss either to" the buyer or the seller (2 Warren's Weed, New York Real Property § 25.10 [2020]). A buyer typically does not intend to shoulder this risk, which arises due to the seller's financial situation. Although, upon receipt of payment, each lender is statutorily required to timely record a mortgage satisfaction (see RPAPL 1921 [1] [a]), there is always a possibility that the lender may not adhere to its statutory obligations. The question of which party bears the risk of that possibility was answered by the parties in paragraph 11 of their contract, which required plaintiff to deliver a deed with all liens satisfied.
Some courts have determined in circumstances similar to the present case that, even where the lender was present at the closing, "the vendor was unable to perform his [or her] obligations under the contract. The vendor might have expected to pay for the release out of the purchase money, and thereafter to deliver the release to the vendee. But the vendor was not entitled to receive the purchase money unless and until the premises were free and clear of all [e]ncumbrances" (Wolas v Russo, 138 Misc 702, 704 [Mun Ct of NY, Borough of Manhattan 1930]; see Mahaney v 580 Madison Ave., Inc., 135 Misc 603, 605-606 [Sup Ct, New York County 1930] [noting that a vendee "cannot properly be expected to pay the entire purchase price in return for a conveyance of property [e]ncumbered by unsatisfied liens and trust to the vendor() using the purchase money to obtain the satisfactions from the lienors and to the vendor() thereafter turning the same over to him," because the vendor had a duty to discharge the encumbrances prior to the closing], affd 233 App Div 668 [1931]; see also Berger v Crist, 121 App Div 483, 484 [1907]). "This difficulty could have been avoided had a provision been inserted in the contract that the vendee was to advance the amount of the mortgage to enable the vendor to satisfy the same at the closing" (Mahaney v 580 Madison Ave., Inc., 135 Misc at 607). Although parties to a real estate contract may include provisions to address a situation in which the seller will pay off a mortgage with the purchase money (see id.; 2 Warren's Weed, New York Real Property § 25.09 [2020]), hold a portion of the purchase money in escrow until a satisfaction of mortgage is recorded or except such mortgage liens from the lien covenant, the contract here does not contain any such provisions.
Notably, on the standard form contract, after saying that the seller will transfer the property "by means of a [w]arranty [d]eed, with [l]ien [c]ovenant," the form contains a blank that creates the option to insert another type of deed. The parties were thus "free to vary [the contract's] terms, but chose not to do so" (Laba v Carey, 29 NY2d 302, 309 [1971]). They are therefore bound by the terms upon which they agreed (see Greenfield v Philles Records, 98 NY2d at 569). I understand that plaintiff relied upon the common practice, developed over the years in the real estate closing realm, of using the proceeds of a sale to pay off existing mortgages. The majority's decision protects the long-standing customs in such circumstances. While I do not seek to disturb the typical course of real estate closings, and do not wish to upend the often-necessary practice of paying off mortgage liens with closing proceeds, I believe that it is more important to hold parties to the terms of their contracts. Buyers and sellers — assisted by their real estate brokers and attorneys, who regularly handle such matters — may alter the terms of the form contracts to reflect the nature of their individual circumstances. I cannot agree with the majority that the use of a standard form real estate contract necessarily incorporates the common practices in the real estate industry such that those practices are given more weight than the language of the contract itself. In contract law, the unambiguous language of the contract must prevail (see id. at 569-570).
At closing, defendant proposed an escrow option to await satisfaction of the mortgages — an option admittedly not included in the contract, but which possibly could have permitted the closing to go forward despite plaintiff's failure to meet her obligation under the contract to deliver a warranty deed with a valid lien covenant — but plaintiff was not willing to agree to such a condition. As plaintiff failed to fully perform her contractual obligations because she did not deliver a deed under the terms required by the contract, she did not establish her breach of contract cause of action.[FN6] Therefore, defendant was entitled to summary judgment dismissing that cause of action.
Defendant also sought specific performance of the contract. This demand is complicated by the fact that, after the parties' closing was unsuccessful, plaintiff sold the property to subsequent purchasers. Although courts will generally not enter a decree for the specific performance of a real estate contract where the property has been conveyed to third parties (see Bank of N.Y., Albany v Hirschfeld, 37 NY2d 501, 506 [1975]; Saperstein v Mechanics & Farmers Sav. Bank of Albany, 228 NY 257, 260 [1920]; Potter v County of Essex, 272 App Div 969, 970 [1947]), the remedy of specific performance may be available if the person to whom the seller subsequently sold the property was not a good faith purchaser for value (see Bailey v Morgan, 80 AD2d 972, 972 [1981]; Maurer v Albany Sand & Supply Co., 40 AD2d 883, 883 [1972] [noting that "if the subsequent vendees are in the action, the court could grant specific performance if they are not good faith purchasers"]). "Specific performance may be granted despite any rights of a subsequent vendee, if he [or she] bought with knowledge of [the original attempted buyer's] claims" (Royce v Rymkevitch, 29 AD2d 1029, 1030 [1968]). Indeed, "a purchaser of real property is bound by the consequences of a lawsuit of which he [or she] has actual knowledge" (Da Silva v Musso, 76 NY2d 436, 439 [1990]).
As it is unclear, based on the information that was in the record before Supreme Court on the summary judgment motions,[FN7] whether the subsequent purchasers were good faith purchasers for value, this Court should remit for Supreme Court to determine that issue. If they were not, then the court would determine whether defendant intended to purchase the property pursuant to the contract or whether she was attempting to deviate from its terms (see 172 Audubon Corp. v 1018 Morris Park Ave. Realty, Inc., 21 AD3d 861, 861 [2005] [noting that a party who insists on assurances that are not required by the contract, and refuses to close absent those assurances, has breached the contract]; see also Kabro PM, LLC v WGB Main St., LLC, 52 AD3d 659, 659 [2008], lv denied 12 NY3d 701 [2009]). If the subsequent purchasers were good faith purchasers, or if specific performance is otherwise not awarded to defendant, she should be entitled to return of her $4,000 down payment, with interest, because plaintiff was not ready to perform at closing (see Nehmadi v Barbaro, 257 AD2d 551, 551 [1999]). Accordingly, I believe that we should deny plaintiff's motion for summary judgment on her breach of contract cause of action, dismiss the complaint due to plaintiff's failure to perform under the contract, and remit the matter to Supreme Court for further proceedings on defendant's counterclaim.
ORDERED that the motion is denied, without costs.
ORDERED that the appeal from the order entered October 31, 2017 is dismissed, without costs.
ORDERED that the order entered October 15, 2018 and the judgment entered thereon are affirmed, without costs.



Footnotes

Footnote 1: Defendant's appeal from the October 2017 order must be dismissed as that is a nonfinal order and the right to appeal from it was extinguished upon entry of the October 2018 judgment (see Augusta v Kwortnik, 161 AD3d 1401, 1403 [2018]). Although defendant would ordinarily be permitted to raise arguments addressing this interlocutory order upon her appeal from the final judgment (see CPLR 5501 [a] [1]), defendant has abandoned any such arguments by not raising them in her appellate brief (see Antokol & Coffin v Myers, 30 AD3d 843, 844 n 1 [2006]).

Footnote 2: We take note that, in a subsequent March 2019 order, Supreme Court corrected the judgment by subcontracting the $4,000 contract deposit.

Footnote 3: To the extent that defendant is asserting that the subsequent purchasers are parties because they appeared in the action, and that they are in default for failing to answer her claims ostensibly raised against them (see CPLR 3019 [d]), defendant did not move to find them in default within a year; thus, per statute, defendant's claims against the subsequent purchasers should be dismissed (see CPLR 3215 [c]).

Footnote 4: Contrary to the majority, I render no opinion regarding the marketability of title to this property, or to any property under similar circumstances. Rather, I opine that plaintiff failed to strictly adhere to the provision in paragraph 11 of the contract that required her to provide at closing a valid "[w]arranty [d]eed, with [l]ien [c]ovenant." It is therefore irrelevant that plaintiff provided "documented assurance that the marketable title was being provided," inasmuch as plaintiff did not fully satisfy her contractual obligations.

Footnote 5: Although procurement of title insurance may provide protection against a lien, the record contains competing information about whether defendant could obtain appropriate title insurance before the closing. In any event, while title insurance may have protected defendant's interests in the property, the contract did not require her to obtain or bear the expense of it; under the contract, plaintiff accepted the obligation to transfer title free of any liens. Thus, the majority's references to insurability of title, paragraph 9 of the contract and defendant's failure to obtain title insurance are irrelevant.

Footnote 6: We note that the majority does not cite paragraph 11 of the parties' contract — which required plaintiff to transfer the property "by means of a [w]arranty [d]eed, with [l]ien [c]ovenant" — nor conclude that plaintiff complied with that contractual language. It is difficult to understand how the majority can hold that plaintiff was entitled to summary judgment on her breach of contract claim without first concluding that she complied with all relevant contract terms.

Footnote 7: Although defendant's motion papers to this Court include a deed from plaintiff to the subsequent purchasers that acknowledges this litigation, that document was not before Supreme Court on the summary judgment motions. Thus, it cannot be considered in our review of the order on those motions.