Please Me, LLC v State of New York (2023 NY Slip Op 02043)

Please Me, LLC v State of New York

2023 NY Slip Op 02043

Decided on April 20, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:April 20, 2023

534421
[*1]Please Me, LLC, Appellant,
v
State of New York, Respondent.

Calendar Date:February 22, 2023

Before:Garry, P.J., Egan Jr., Aarons, Reynolds Fitzgerald and Ceresia, JJ.

La Redolla, Lester & Associates, LLP, Garden City (Robert J. La Redolla of counsel) and Kostelanetz LLP, New York City (Claude M. Millman of counsel), for appellant.
Letitia James, Attorney General, Albany (Frederick A. Brodie of counsel), for respondent.

Reynolds Fitzgerald, J.
Appeal from an order of the Court of Claims (Francis T. Collins, J.), entered November 3, 2021, which granted defendant's motion for summary judgment dismissing the amended claim.
During the early stages of the COVID-19 pandemic, the Office of General Services sought quotes from vendors for 1,000 ventilators. The proposals were to include payment terms and delivery time(s). Claimant, a manufacturer of medical merchandise and a seller of health products, proposed to supply 1,000 model 1200 ventilators, equipped with air compressors, at a price of $25,000 each, and to deliver 100 ventilators on March 27, 2020, 500 ventilators on March 31 and 400 ventilators on April 2. The Department of Health accepted the proposal and issued a purchase order to claimant on March 23, 2020 incorporating the terms of claimant's proposal and, within a day, remitted a $12.5 million partial payment to claimant.
After the units were not delivered on the prescribed dates, the parties continued to communicate and negotiate [FN1] but no ventilators were delivered. On June 8, 2020, defendant issued a termination letter cancelling the contract for cause for failure to deliver the ventilators. In 2021, claimant commenced this action against defendant and subsequently filed an amended claim, alleging several causes of action for, as relevant here, breach of contract.
Defendant moved pre-answer to dismiss the amended claim pursuant to CPLR 3211 (a) (1) and (7). The Court of Claims advised the parties that it intended to treat defendant's motion as a motion for summary judgment pursuant to CPLR 3211 (c) and allowed the parties to submit additional proof. Thereafter, the Court of Claims granted defendant's motion for summary judgment dismissing the amended claim. Claimant appeals.
"On a motion for summary judgment, it is the moving party's burden to establish its prima facie entitlement to judgment as a matter of law by presenting sufficient evidence demonstrating the absence of any material questions of fact. Once a prima facie case has been established, the burden shifts to the party opposing the motion to demonstrate the existence of a material issue of fact" (EDW Drywall Constr., LLC v U.W. Marx, Inc., 189 AD3d 1720, 1721-1722 [3d Dept 2020] [citations omitted]; see O'Toole v Marist Coll., 206 AD3d 1106, 1107-1108 [3d Dept 2022]). "To recover for a breach of contract, a party must establish the existence of a contract, the party's own performance under the contract, the other party's breach of its contractual obligations, and damages resulting from the breach" (Adirondack Classic Design, Inc. v Farrell, 182 AD3d 809, 811 [3d Dept 2020] [citations omitted]; see Integrity Intl., Inc. v HP, Inc., 211 AD3d 1194, 1196 [3d Dept 2022]).
Defendant met its burden on the summary judgment motion by submitting proof that it complied with the contract, did not modify its terms and terminated the contract for cause. In support of its motion, defendant submitted, among other things, a copy [*2]of the purchase order, claimant's proposal, the termination letter, the amended notice of claim and three affidavits. The chief procurement officer of the Office of General Services attested that a purchase order was issued on March 23, 2020 and was sent to claimant via email. The procurement officer further averred that although there were two internal administrative revisions made to the purchase order to permit processing of the partial payment, these revisions did not affect the contents of the purchase order, and defendant never agreed to any amendment of the purchase order itself. On June 8, 2020, having still not received any ventilators, defendant sent a formal cancellation letter to claimant. An attorney for the Office of General Services attested that on June 12, 2020 claimant filed a notice of claim. Both prior to and after the filing of the notice of claim, he was involved in discussions with claimant's counsel to negotiate a settlement, but a settlement was not achieved.
In opposition to defendant's motion, claimant submitted an affidavit and supplemental affidavit of its principal, attaching numerous emails exchanged with defendant's personnel. Claimant's principal averred that neither the dates of delivery nor the units were material terms of the agreement, and that defendant acted in bad faith and equivocated as to its intention to cancel the contract.
Initially, we agree with the Court of Claims' finding that the purchase order constituted a valid contract. The proposal set forth the essential terms of the contract including the number, type and price per unit of the ventilators to be purchased and the delivery dates. Defendant then accepted the offer and issued the purchase order, which was electronically authorized by defendant (see UCC 2-207; compare Jeppestol v Alfa-Laval, Inc., 293 AD2d 575, 576 [2d Dept 2002]). Claimant acknowledged receipt of the purchase order without objecting to any of its terms and, importantly, accepted $12.5 million from defendant as partial prepayment (see UCC 2-201, 2-204, 1-201[b] [37]). "[A] written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms" (Greenfield v Philles Records, 98 NY2d 562, 569 [2002]; see Matter of Olszewski v Cannon Point Assn., Inc., 148 AD3d 1306, 1309 [3d Dept 2017]).
Claimant asserts that the Court of Claims erred in its finding that time was of the essence. We disagree. In a contract action at law, where the parties specify a definite time of performance in the contract, it is presumed that the parties agreed that time is of the essence unless contrary language is used (see Whitecap [US] Fund I, LP v Siemens First Capital Commercial Fin. LLC, 121 AD3d 584, 591 [1st Dept 2014]; Cooper-Rutter Assoc. v Anchor Natl. Life Ins. Co., 193 AD2d 944, 945 [3d Dept 1993]; Sparks v Stich, 135 AD2d 989, 991 [3d Dept 1987]). Here, the delivery dates were clearly stated in the purchase order, and, in fact, came [*3]from claimant. Accordingly, the court did not err in finding that time was of the essence.
That said, we agree with claimant that in not terminating the contract immediately or at least shortly after April 2, 2020, and continuing to communicate with claimant for delivery of the ventilators or, failing that, at least a firm delivery date, defendant waived its right to assert this. Thus, defendant effectively converted the contract from one where time was of the essence with respect to performance, to a contract demanding performance within a reasonable period of time (see Schenectady Steel Co. v Trimpoli Gen. Constr. Co., 43 AD2d 234, 237 [3d Dept 1974], affd 34 NY2d 939 [1974]; D'Onfro v State of New York, 270 App Div 9, 12 [3d Dept 1945]). While the question of what constitutes a reasonable time is typically a question of fact, where the facts are undisputed, the determination of what constitutes a reasonable time becomes a question of law and is appropriate for summary judgment (see Tedeschi v Northland Bldrs., LLC, 74 AD3d 1613, 1614 [3d Dept 2010]; Hegeman v Bedford, 5 AD3d 632, 632 [2d Dept 2004]; Spagna v Licht, 87 AD2d 626, 627 [2d Dept 1982]). "What constitutes a reasonable time for performance depends upon the facts and circumstances of the particular case" (Ben Zev v Merman, 73 NY2d 781, 783 [1988] [citations omitted]).
Here, the record demonstrates that claimant did not deliver any ventilators until October 29, 2020.[FN2] Unsurprisingly, this delivery was rejected by defendant as untimely. A review of the communications between claimant and defendant from April 2020 until June 8, 2020 — the date of defendant's written termination of the contract — shows defendant repeatedly beseeching claimant for delivery, or at least a firm date for delivery. It is of no small import that the very reason for this contract and the exigent circumstances surrounding it was the unprecedented worldwide pandemic that was occurring. Claimant's continued failure to perform culminated in defendant's written termination of the contract on June 8, 2020. Given these circumstances, we find that claimant breached the contract in failing to perform within a reasonable time (see 12 Baker Hill Rd., Inc. v Miranti, 130 AD3d 1425, 1427 [3d Dept 2015]; Tedeschi v Northland Bldrs., LLC, 74 AD3d at 1614; Hegeman v Bedford, 5 AD3d at 633).
We reject claimant's assertion that the motion for summary judgment was premature, inasmuch as there is no indication that further discovery might reveal material facts that are in defendant's exclusive possession. Claimant's principal was involved in communications with defendant and necessarily possesses any documentation between the parties as evidenced by his production of numerous emails and texts on this motion (see Semzock v State of New York, 97 AD3d 1012, 1013 [3d Dept 2012]; Gersten-Hillman Agency, Inc. v Heyman, 68 AD3d 1284, 1288 [3d Dept 2009]). As to claimant's remaining contentions, they have been considered and found to [*4]be without merit.
Garry, P.J., Egan Jr., Aarons and Ceresia, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: On April 6, 2020, after claimant failed to deliver the ventilators on the above-noted dates, claimant advised respondent that it would be unable to deliver the units on the dates in the purchase order and advised that the new delivery dates for units with compressors were as follows: April 28 — 30 units; May 22 — 150 units; June 17 — 150 units; July 15 — 335 units; and August 4 — 335 units. Claimant advised that it could deliver ventilators without compressors at a delivery rate of 200 ventilators per week beginning on April 25. However, claimant further stated that it could get 100 ventilators with compressors immediately, but that the price of each ventilator would be $125,000.

Footnote 2: At oral argument, claimant argued that it was prepared to deliver the ventilators on April 19, 2020 and that only defendant's failure to provide them with a delivery address prevented it from doing so. However, a review of the correspondence between the parties shows that while claimant's principal told defendant that it had "the first shipment ready to be shipped" on this date, and it was given said address on April 20, no ventilators were delivered. A May 28, 2020 email from claimant further belies this assertion as it states that "the units are all 90[%] ready to ship."