Hogan v Bullock (2024 NY Slip Op 06405)

Hogan v Bullock

2024 NY Slip Op 06405

Decided on December 19, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 19, 2024

CV-23-1685
[*1]John Paul Hogan, Appellant-Respondent,
v
Kathryn P. Bullock et al., Respondents-Appellants, et al., Defendants.

Calendar Date:November 15, 2024

Before:Egan Jr., J.P., Pritzker, Lynch, Fisher and Powers, JJ.

Bartlett, Pontiff, Stewart & Rhodes, PC, Glens Falls (Alexandra D. Finocchio of counsel), for appellant-respondent.
Maynard, O'Connor, Smith & Catalinotto, LLP, Albany (Justin W. Gray of counsel), for respondents-appellants.

Fisher, J.
Cross-appeals from an order of the Supreme Court (Robert J. Muller, J.), entered August 28, 2023 in Warren County, which, among other things, (1) denied plaintiff's motion for partial summary judgment, and (2) partially denied a cross-motion by defendants Kathryn P. Bullock and Janet Emily Bullock for summary judgment dismissing the complaint, and sua sponte dismissed certain counterclaims.
In 2019, the Adirondack Park Agency (hereinafter APA) issued defendants Kathryn P. Bullock and Janet Emily Bullock (hereinafter collectively referred to as defendants) a permit authorizing them to create a two-lot subdivision from their 4.7-acre parcel of real property located between Lake George and state Route 9N, in the Town of Hague, Warren County. Lot 1 contains various structures including two single-family residences, one used by defendants, and Lot 2 contains a 392-square-foot garage; the APA permit also authorized the construction of a single-family dwelling within the garage's footprint. The two lots are roughly the same size and are divided by Chipwick Lane, a private driveway that connects to Route 9N. The centerline of Chipwick Lane serves as the property line until it reaches the garage that is located on Lot 2, at which location the driveway bends around the garage onto Lot 1 and continues along the property line on the Lot 1 side. Relevantly, a condition of the APA permit required that, for any deed conveyance of either lot in the subdivision, "[a]n access easement will be granted by each lot for shared use of the driveway."
In March 2021, plaintiff engaged the services of a professional engineering firm to review the feasibility of constructing a single-family dwelling with an estimated footprint of 5,500 square feet on Lot 2. Following the results of such evaluation, in April 2021, plaintiff and defendants entered into a standard form real estate contract to sell Lot 2 to plaintiff for $775,000. Pursuant to the contract, plaintiff was required to pay an initial $50,000 deposit with the remaining $725,000 due at the closing scheduled for August 2, 2021. The contract also provided for an attorney review period, during which defendants' real estate attorney approved the contract with an amendment to paragraph 29 that provided, among other things, that if plaintiff sought to connect a driveway to Chipwick Lane, he agreed to obtain prior written approval from defendants and that such "access" would be limited to one house but, "[i]n the event that a second house is constructed, [plaintiff] agrees to pursue access from [Route 9N] for both the original house and the second house." Plaintiff's real estate lawyer agreed to the additional terms and returned a countersigned letter to that effect.
Following attorney approval of the contract, defendants allegedly first became aware of plaintiff's intentions to add a bedroom/bathroom to the garage and to construct a separate, single-family house.[FN1] In anticipation of the August 2021 closing, defendants forwarded [*2]a proposed deed and driveway maintenance agreement granting plaintiff a license to use Chipwick Lane, which "shall be extinguished" if he constructs a second house on Lot 2. Plaintiff requested that the license be changed to an easement based on the contract. Defendants refused to grant an easement because plaintiff was planning to construct two houses on the property, but reiterated they would provide him a license to use Chipwick Lane so long as only one house was constructed on Lot 2. Two weeks after the original closing date had passed, citing a concern to have enough time to pour the foundation before the winter, plaintiff declared time was of the essence and scheduled a new closing date for September 2021, requiring the new proposed deed to include an easement pursuant to the contract. Defendants would not agree to provide an easement and failed to submit any closing documents before the new closing date. Pursuant to paragraph 29, plaintiff then agreed to pursue a curb cut permit to connect his driveway directly to Route 9N in order to close immediately, but defendants failed to provide an answer.[FN2]
Approximately two weeks after the second closing date, plaintiff commenced this action for breach of contract seeking specific performance and money damages. Defendants joined issue and asserted various counterclaims, including for a declarative judgment that plaintiff breached the contract by prematurely declaring time is of the essence. Plaintiff then moved for partial summary judgment on his first cause of action seeking specific performance of the contract and counsel fees, and defendants cross-moved for summary judgment seeking, among other things, an order dismissing the complaint and a declaratory judgment that plaintiff breached the contract. Reasoning that there was no meeting of the minds as the parties disagreed over the right of access for Chipwick Lane under paragraph 29, Supreme Court found that there was no valid contract and denied plaintiff's motion for summary judgment in its entirety. As a result of this finding, Supreme Court partially granted defendants' cross-motion for summary judgment by dismissing the first cause of action in the complaint, and otherwise denied the balance of the cross-motion. Supreme Court also, after searching the record in the interest of judicial economy, dismissed the counterclaim for declaratory judgment and directed the return of plaintiff's $50,000 deposit. These cross-appeals ensued.
Initially, Supreme Court erred in determining that there was no valid contract. It is well-settled law that, "[i]n order to establish a valid existing contract, [a party] must demonstrate that there was an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound" (Harris v Reagan, 221 AD3d 1069, 1072 [3d Dept 2023] [internal quotation marks and citations omitted]). Here, each of these elements are well-demonstrated in the record, and neither party had disputed the existence of a valid [*3]contract in their respective motions — but rather admitted that there was a valid contract in their respective statements of undisputed facts (see Prendergast v Swiencicky, 183 AD3d 945, 946 [3d Dept 2020], lv denied 36 NY3d 944 [2020]). Indeed, the record further reveals that both parties signed the form contract and, during the attorney review period, each party agreed to the proposed amendment to paragraph 29, which was then signed by both real estate attorneys before moving forward with ordering a title search and preparing other closing documents, therefore establishing the parties' objective understanding that an agreement had been reached (see Savignano v Play, 210 AD3d 1228, 1230-1231 [3d Dept 2022]; Prendergast v Swiencicky, 183 AD3d at 946-947; see also Gator Hillside Vil., LLC v Schuckman Realty, Inc., 158 AD3d 742, 744 [2d Dept 2018]).
Contrary to Supreme Court's finding, the parties' dispute over the meaning of the word "access" in the amendment to paragraph 29 does not render the entire contract invalid. Rather, the issue distills to one of contract interpretation and whether an ambiguity exists. In determining whether a contract is ambiguous, "the court should examine the entire contract and consider the relation of the parties and the circumstances under which it was executed. Particular words should be considered, not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties as manifested thereby" (White Knight Constr. Contrs., LLC v Haugh, 216 AD3d 1345, 1347-1348 [3d Dept 2023] [internal quotation marks and citations omitted]; see Atwater & Co. v Panama R.R. Co., 246 NY 519, 524 [1927]). In doing so, courts "must compare the competing interpretations advanced by the parties to the contractual language, which represents the best evidence of the parties' intent" (MAK Tech. Holdings Inc. v Anyvision Interactive Tech. Ltd., ___ NY3d ___, ___, 2024 NY Slip Op 03376, *1 [2024] [internal quotation marks, brackets and citation omitted]). However, "an ambiguity never arises out of what was not written at all, but only out of what was written so blindly and imperfectly that its meaning is doubtful" (Donohue v Cuomo, 38 NY3d 1, 13 [2022] [internal quotation marks and citations omitted]; accord Integrity Intl., Inc. v HP, Inc., 211 AD3d 1194, 1197 [3d Dept 2022]). To that point, "[a] contract is unambiguous if the language it uses has a definite and precise meaning, unattended by danger of misconception in the purport of the agreement itself, and concerning which there is no reasonable basis for a difference of opinion" (Zollo v Adirondack Lodges Homeowners Assn., Inc., 225 AD3d 973, 975 [3d Dept 2024] [internal quotation marks and citations omitted]). As such, "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms" (Greenfield v Philles Records, 98 NY2d 562, 569 [2002]; accord Please Me, LLC v State of New York[*4], 215 AD3d 1149, 1151 [3d Dept 2023]). "Adherence to these precepts is particularly important in the context of real property transactions, where commercial certainty is a paramount concern, and where the instrument was negotiated between sophisticated, counseled business people negotiating at arm's length" (Cloke v Findlan, 165 AD3d 1545, 1547 [3d Dept 2018] [internal quotation marks, ellipsis and citations omitted]).
Here, defendants contend that the amendment to paragraph 29 did not state whether the grant of "access" over Chipwick Lane would be an easement or license, and, therefore, plaintiff had no right to demand an easement under the contract. We disagree. When considering the contract as a whole and the circumstances in which it was entered, we find that no ambiguity exists. Specifically, paragraph 1 of the contract included with the sale of Lot 2 "all of [defendants'] transferable rights, privileges, and easements, if any, related to the property." Paragraph 16 provided that defendants would transfer all rights, title and interest in the property, including restrictions imposed on all lots in the subdivision. Such restrictions relate to the APA permit, which conditioned the approval of defendants' subdivision on the requirement that any conveyance of either lot would include an easement for the use of Chipwick Lane. Defendants concede that the APA permit required such an easement for Lot 2, but reasoned that the permit also allowed them to restrict access to Chipwick Lane in the event that plaintiff constructed a second dwelling on Lot 2. It did not. There is no reasonable basis for this belief, as the APA permit provided unequivocal language that an easement for Lot 2 "shall" be provided for "[a]ny" deed conveyance — without any such restriction as to the number of dwellings. Contrary to defendants' reading of the contract and APA permit, a license had not been contemplated or provided for in their agreement. To hold otherwise would either add language that did not exist in the contract or construe "access" in a conflicting manner to the rest of the terms of the contract, notably paragraph 16 that provides for the easement created pursuant to the APA permit. When further considering that both parties were represented by the same real estate agent and separate counsel, who both approved the amendment to paragraph 29 that was drafted by defendants' real estate lawyer, we cannot say that the contract is anything but complete, clear and unambiguous as to "access" referring to an easement for the use of Chipwick Lane.
In view of the foregoing, "to obtain summary judgment for specific performance of a real estate contract, the movant must demonstrate that he or she substantially performed his or her contractual obligations and was ready, willing and able to fulfill his or her remaining obligations, that [the] defendant was able but unwilling to convey the property and that there is no adequate remedy at law" (Lambert v Schiller, 156 AD3d 1285[*5], 1289 [3d Dept 2017] [internal quotation marks, brackets and citations omitted]). As relevant here, "[w]hen a party to a real estate contract declares time to be of the essence in setting a closing date, each party must tender performance on that date, and a failure to perform constitutes a default" (Prendergast v Swiencicky, 183 AD3d at 947 [internal quotation marks and citation omitted]). In support of his motion, plaintiff submitted an affidavit contending that he was ready, willing and able to perform his contractual obligation at both the original and second closing dates, but for both closings defendants had inexplicably refused to complete the transaction over the dispute of his access to Chipwick Lane. He explained that, although he ordered a log home and planned to add a bedroom/bathroom to the garage, he had not yet triggered the requirement in paragraph 29 which required him to connect directly to Route 9N, and therefore was still entitled to the easement under the express terms of the contract that defendants refused to provide. Nevertheless, plaintiff also stated that he was willing to pursue a curb cut permit, another express provision of paragraph 29, but that defendants failed to tender any of the required closing documents before either closing date. Based on this proffer, we are satisfied that plaintiff established his prima facie entitlement to summary judgment for specific performance (see Mills v Chauvin, 103 AD3d 1041, 1045-1046 [3d Dept 2013]).
In opposition, defendants failed to raise a material issue of fact or otherwise prove entitlement to summary judgment on their cross-motion. It is uncontroverted that defendants did not submit any of the required closing documents for the second scheduled closing, which constitutes a default. Defendants' justification for refusing to close on the grounds that plaintiff was not entitled to an easement over Chipwick Lane is without merit for the reasons stated above. But, even adopting defendants' flawed interpretation, a plain reading of paragraph 29 dictates that a new driveway is to be constructed when a second house is constructed on Lot 2, and it is undisputed that this simply has not occurred nor would occur prior to closing.[FN3] Notwithstanding the issue of the second house, defendants utterly fail to address the fact that plaintiff also agreed to pursue access from Route 9N in order to close immediately before winter — whether or not two houses were constructed — which falls squarely within the directive of paragraph 29 that defendants were insisting on enforcing initially, but would ultimately not agree to once plaintiff acquiesced. Contrary to defendants' further contentions, the language of paragraph 29 was not a condition precedent to closing, as the contract lacks clear language demonstrating the parties intended to create such condition (see Ampower-US, LLC v WEG Transformers USA, LLC, 214 AD3d 1129, 1131 [3d Dept 2023]). Under these circumstances, we find that plaintiff was [*6]ready, willing and able to perform under the contract, but defendants' refusal to complete the transaction constituted a breach of contract (see Prendergast v Swiencicky, 183 AD3d at 949; see also Zollo v Adirondack Lodges Homeowners Assn., Inc., 225 AD3d at 978).
Accordingly, even viewing the evidence in a light most favorable to defendants, Supreme Court should have granted plaintiff's motion for partial summary judgment awarding specific performance and, consequentially, should have denied defendants' cross-motion in its entirety (see Lambert v Schiller, 156 AD3d at 1289; Mills v Chauvin, 103 AD3d at 1045-1046). As a result of our disposition, it was an error to direct the return of plaintiff's $50,000 deposit. Further, plaintiff is entitled to an award of counsel fees and expenses under the terms of paragraph 13 of the contract, and such request may be presented to Supreme Court. We have examined the remaining contentions of the parties, and have found them to be without merit, rendered academic or without credible support in the record.
Egan Jr., J.P., Pritzker, Lynch and Powers, JJ., concur.
ORDERED that the order is modified, on the law, with costs to plaintiff, by reversing so much thereof as denied plaintiff's motion for partial summary judgment on his cause of action for specific performance and granted defendants' cross-motion for summary judgment dismissing said cause of action; motion granted to said extent, cross-motion denied to said extent; and, as so modified, affirmed.

Footnotes

Footnote 1: Plaintiff had submitted a jurisdictional inquiry to the APA and the Lake George Park Commission relating to the construction of the proposed single-family dwelling.

Footnote 2: For approximately a week, defendants' real estate attorney acknowledged the request and a second request for an update from plaintiff's real estate attorney, but no decision had been made before plaintiff commenced this action.

Footnote 3: Notably, plaintiff was in the process of obtaining permits to construct the second house at the time of both closing dates, but there is nothing in the record demonstrating that he had received permits from the APA, Lake George Park Commission or municipality authorizing him to do so yet.